STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert D. HANSON, Defendant-Appellant.†

Court of Appeals

*No. 99–0120–CR. Submitted on briefs November 5, 1999.—Decided December 15, 1999.*

## 2000 WI App 10

(Also reported in 606 N.W.2d 278.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Robert D. Hanson appeals from a judgment of conviction for causing great bodily harm with intent to cause substantial bodily harm while armed with a dangerous weapon (aggravated battery while armed) pursuant to §§ 939.63(1)(a)2 and 940.19(5), STATS., and from an order denying postconviction relief. Hanson argues that the State violated the sentencing terms of a plea agreement by failing to recite the express terms of the sentencing recommendation and by reciting a less than neutral statement of the sentencing recommendation. We reject Hanson's arguments. We affirm the judgment and order.

## *Facts*

¶ 2. The criminal complaint charged Hanson with four counts: attempted murder while armed with a dangerous weapon, aggravated battery while armed, bail jumping by violating the terms of a bond and violating a domestic abuse injunction. In due course, an information alleging the same charges was filed.

¶ 3. Following plea negotiations, the State and Hanson reached a plea agreement whereby Hanson would plead no contest to the aggravated battery while armed charge. In exchange, the State agreed to dismiss all of the other counts on a read-in basis, plus misdemeanor charges pending in other cases. In addition, the State agreed to cap its sentencing recommendation at ten years. Hanson's sentencing exposure on the aggravated battery while armed charge was fifteen years.

¶ 4. The plea agreement was ratified at a plea hearing on January 27, 1998. At the hearing, the State recited that "[it] would cap its prison recommendation at ten years." In the course of the plea colloquy, the trial court personally confirmed with Hanson that the

penalties included a possible sentence of fifteen years. A plea questionnaire signed by Hanson also recited the fifteen-year maximum sentence and the State's ten-year sentence recommendation. After the court accepted the plea, the parties debated whether a presentence investigation was necessary. Hanson did not want such an investigation. The State did. The court ordered an investigation in light of "the State's recommendation being ten years, the possible maximum being 15 years, and considering the nature of the acts."

¶ 5. Following the plea, the State filed a victim impact statement in which the victim sought the "maximum sentence allowed." In response, Hanson filed a motion contending that the State's filing of the victim impact statement violated its promise to cap its sentencing recommendation at ten years.[1] Hanson asked the trial court to strike the victim impact statement.

¶ 6. Hanson's motion to strike and the sentencing itself were conducted in a single hearing. The trial court first addressed the motion to strike the victim impact statement. Hanson acknowledged that the victim had a right to be heard, but he contended that the district attorney's forwarding of the victim impact statement to the court violated the sentencing recommendation provisions of the plea agreement. The State responded that the victim impact statement was mandated by law and that the role of the district attorney in serving as a conduit for the statement was not "backdooring or sandbagging a plea agreement." The trial court agreed with the State. The court said, "I do

---

[1] Hanson also moved to strike certain portions of the presentence report that alluded to certain evidence which the trial court had previously suppressed. That matter is not before us on appeal.

294

not see the fact that the victim does not agree with the plea bargain as . . . a violation of the plea bargain."

¶ 7. The trial court then turned to the sentencing. The court heard from the victim, who described the attack on her by Hanson and the effect it had on her life.[2] She asked for the maximum sentence. The victim's brother also spoke and asked that Hanson "be punished to the fullest extent."

¶ 8. That brings us to the prosecutor's statements that prompt this appeal. We quote the relevant portions.

> Your Honor, I am very reluctant and circumspect in making comments in sentencing in this case because, as the Court is aware, there is a plea agreement. The Court is aware what the plea agreement is, and I certainly stand by the plea agreement in which I, as a representative of the State, entered. Anything I say is certainly not meant to circumspect or contravene the plea agreement in any way. I am not trying to undermine the plea agreement, I am not attempting in any way, shape or form, to backdoor a different recommendation than that which has previously been represented in terms of sentencing.

¶ 9. The prosecutor then went on to describe the violent nature of Hanson's attack on the victim, his prior criminal record and contacts, his prior violent episodes with the victim and another woman, and the minimizing of the offense by certain members of Hanson's family. The prosecutor then concluded with the following:

---

[2] Following the victim's statement, the trial court explained that the statement was actually a reading by the victim of her victim impact statement.

Judge, there was a plea agreement in this case; I stand by the plea agreement. Having said that, this is an extremely violent case. This is an individual who constitutes a clear and present danger, not only to the two women who have been in intimate relationships with the Defendant, but also to the community at large. I urge the Court to consider all of the information that has been presented to the Court, in fashioning a sentence that is both fair to the Defendant and to the victim.

¶ 10. Hanson presented his brother-in-law who spoke on his behalf and asked for leniency. Hanson's attorney then made an extended statement on his behalf. He concluded by saying:

I think that the joint recommendation of the plea agreement for ten years, reflects the considered judgment of both the lawyers who know both the strengths and the weaknesses of this case, the best. I think that the agreed upon recommendation here is the appropriate sentence to be imposed for the injuries that [the victim] sustained, which we do not dispute. I would ask the Court [to] follow that recommendation, and impose that sentence with the appropriate front-time credit.

¶ 11. Hanson then made a brief statement on his own behalf. Hanson's lawyer followed with the observation that a recent change in the chair's position of the parole commission and the public attitude toward parole indicated that a person such as Hanson under a ten-year sentence would likely "serve a much longer period of time, much closer to mandatory release than they will have previously."

¶ 12. The trial court offered its sentencing remarks. The court touched on all of the relevant factors. The court then spoke to the plea agreement:

I understand . . . what the plea agreement is, the District Attorney at the time the plea was taken indicated that the State's recommendation would be capped at a ten-year prison sentence. I'm satisfied that the State has complied with the plea agreement.

¶ 13. Ultimately, the trial court agreed with the presentence report recommendation for a fifteen-year sentence. The court principally relied on Hanson's prior misdemeanor record, which resulted from a domestic abuse situation, his prior violent contacts with the victim, his alcohol abuse and the violence of the offense.

¶ 14. Represented by new counsel for purposes of postconviction proceedings, Hanson moved for a resentencing before a different judge. Hanson contended that the State had breached the sentencing provisions of the plea agreement by failing to expressly recite the ten-year cap and by rendering a less than neutral recital of the agreement. Perhaps anticipating that the State would argue that Hanson had waived these arguments because his trial counsel had not raised these issues during the sentencing proceeding, Hanson additionally alleged that trial counsel was ineffective for failing to object to the prosecutor's sentencing statements.

¶ 15. At the motion hearing, trial counsel explained that he did not object to the prosecutor's statements because he believed that his concurrent written motion contending that the State had breached the plea agreement by filing the victim impact statement sufficiently preserved the issue. Counsel explained that he viewed the prosecutor's statements as an "ongoing breach." Counsel further testified that

he felt it would be futile to resurrect the issue since the trial court had already rejected his written motion.

¶ 16.    In response, the State expressed its belief that trial counsel had preserved the issue by his written motion. As to the merits, however, the State contended that it had not breached the plea agreement.

¶ 17.    After reviewing the plea and sentencing hearings, the trial court denied Hanson's motion for a new sentencing hearing before a different judge. The court acknowledged that the prosecutor had not expressly invoked the phrase "ten years." However, the court also noted that the motion hearing, conducted as part and parcel of the sentencing hearing, had focused squarely on the "ten-year cap" provision of the plea agreement. In light of that, the court reasoned that the prosecutor's failure to use the "magic words" was not a breach of the plea agreement. In addition, after reviewing relevant case law, the trial court further concluded that the prosecutor's sentencing remarks did not breach the plea agreement.

¶ 18.    In light of those rulings, the trial court recognized that the issue of trial counsel's failure to specifically object to the prosecutor's remarks was a moot issue. However, the court nonetheless proceeded to hold that counsel had preserved the issue and that there would have been no point in counsel continuing to press the issue.

¶ 19.    The trial court denied Hanson's motion. Hanson appeals.

## Discussion

### Alleged Breach of the Plea Agreement

1. Failure of the State to Expressly
Recite the Sentencing Recommendation

■

¶ 20.   We first address Hanson's complaint that the State failed to expressly recite the "ten-year cap" provision of the plea agreement at the sentencing hearing. We acknowledge, as did the trial court, that the prosecutor did not expressly recite the State's agreement to cap its sentencing recommendation at ten years. In the legal laboratory and in the perfect world, that would have occurred. However, the law is a craft, not a science. As long as humans practice the law, human failings will occur. That is why we sometimes say that a defendant is entitled to a fair trial, not a perfect trial, *see State v. Crandall*, 133 Wis. 2d 251, 259, 394 N.W.2d 905, 908 (1986), and an adequate lawyer, not the best lawyer,[3] *see State v. Williquette*, 180 Wis. 2d 589, 605, 510 N.W.2d 708, 713 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995).

¶ 21.   In addressing Hanson's claim, we properly look to the entire proceeding. At the plea hearing, the State recited that it would "cap its prison recommendation at ten years." After the State filed the victim impact statement, Hanson brought a motion which contended that this action was a breach of the State's promise. The motion was heard as part of the sentencing proceeding. The focus of that portion of the

---

[3] We do not suggest by these remarks that Hanson's lawyer was merely "adequate." To the contrary, counsel negotiated a very favorable plea agreement and then vigorously argued that the trial court should follow the State's recommendation.

sentencing hearing was devoted entirely to the "ten-year cap" provision of the plea agreement, and the State vigorously argued that it had not breached its sentencing recommendation promise.

¶ 22. After the trial court rejected Hanson's motion, the hearing moved directly into the sentencing phase of the proceeding. Although the State did not expressly allude to the "ten-year cap" during its sentencing remarks, the parties referred generally to the sentencing recommendation provision of the plea agreement a number of times. Under these circumstances, there could be no misunderstanding as to what the parties were referring to, or what the State's sentencing recommendation was, despite the absence of the precise words. This is confirmed by the trial court's finding during the course of its sentencing remarks that the State had complied with the sentencing recommendation. It would defy logic and common sense for us to say, in light of what had just transpired moments earlier, that the State's failure to expressly recite the ten-year cap constituted a breach of the plea agreement. Under these circumstances, we agree with the trial court that the absence of the "magic words" was not fatal.

## 2. The State's Sentencing Remarks

¶ 23. Hanson also contends that the prosecutor's sentencing remarks constituted a less than neutral recital of the State's sentencing recommendation. Hanson reasons that the prosecutor's remarks so qualified the sentencing recommendation as to undercut it.

¶ 24. If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so

that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Ferguson,* 166 Wis. 2d 317, 321, 479 N.W.2d 241, 243 (Ct. App. 1991) (quoting *Santobello v. New York,* 404 U.S. 257, 262 (1971)). A prosecutor may not render a less than neutral recitation of the plea agreement. *See State v. Poole,* 131 Wis. 2d 359, 364, 389 N.W.2d 40, 42 (Ct. App. 1986). "*Santobello* proscribes not only explicit repudiations of plea agreements, but also 'end-runs around them.'" *Ferguson,* 166 Wis. 2d at 322, 479 N.W.2d at 243 (quoting *United States v. Voccola,* 600 F. Supp. 1534, 1537 (D.R.I. 1985)). Thus, the State may not accomplish through indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended. *See id.*

¶ 25. Hanson contends that the prosecutor violated the plea agreement by using qualifying language that undercut the plea agreement. Hanson concedes that the prosecutor confirmed the plea agreement. However, he contends that the prosecutor's ensuing statement, "Having said that, this is an extremely violent case," followed by her description of the violence associated with the crime and other aggravating factors, signaled that the trial court should not follow the agreement.

¶ 26. Here again, as with Hanson's earlier issue, we properly look to the entire sentencing proceeding to get the true flavor of the prosecutor's remarks. The first words spoken by the prosecutor when she made her sentencing remarks were a strong affirmation of the sentencing provisions of the plea agreement. The prosecutor explained that she was going to be "very . . . circumspect" in making her sentencing remarks because she was "aware what the plea agreement is."

She further stated, "I certainly stand by the plea agreement." The prosecutor then emphasized that none of her remarks were meant to "contravene the plea agreement in any way" and that she was "not attempting in any way, shape or form, to backdoor a different recommendation than that which has previously been represented in terms of sentencing."

¶ 27. These kinds of plea agreements represent a fine line for the State to walk at a sentencing hearing. On the one hand, the State must obviously abide by its agreement to cap its sentencing recommendation. But on the other, the State is free to argue for an appropriate sentence within the limits of the cap. Here, the prosecutor's opening remarks reflected an understanding of this fine line. She stressed to the trial court that the State stood by its sentencing promise, that she understood the need to be circumspect in her remarks in light of that promise, and that her remarks should not be taken as an effort to undo the plea agreement.

¶ 28. These remarks are important because they reveal a prosecutor who was not simply giving lip service to the plea agreement. To the contrary, the prosecutor emphasized that the State was adhering to the plea agreement and that her sentencing remarks should not be taken in any other light. Having set the record straight on that point, the prosecutor was entitled under the plea agreement to speak to the aggravating factors relevant to the sentencing and to seek a sentence at the high end of the cap.[4] Finally, we note that the prosecutor concluded her sentencing remarks by asking the trial court to impose a sentence which was "fair to the Defendant and fair to the victim."

---

[4] It is interesting to note that Hanson viewed the plea agreement as a joint recommendation for a ten-year cap.

¶ 29. Thus, we reject Hanson's argument that this case is governed by *Poole*. There we held that the State had breached a plea agreement where the prosecutor explained that its sentencing recommendation was agreed to "before we knew of the other [probation revocation]. But that is our agreement." *Poole*, 131 Wis. 2d at 360, 389 N.W.2d at 41. By that language, the prosecutor was functionally telling the court that the deal was off and that the court should ignore or reject the plea agreement. Here, as we have said, the prosecutor strongly affirmed the plea agreement and did not make any statements that expressly, covertly or otherwise suggested that the State no longer adhered to the agreement.

¶ 30. We conclude that the State's sentencing remarks were not a less than neutral recital of the sentencing recommendation terms of the plea agreement.

### *Conclusion*

■

¶ 31. We conclude that the State did not breach the sentencing recommendation provisions of the plea agreement by failing to recite the express terms of the recommendation. We further conclude that the State's sentencing remarks were not a less than neutral statement of its sentencing recommendation under the plea agreement.[5]

¶ 32. We affirm the judgment of conviction and the order denying postconviction relief.

---

[5] Since we have held that the prosecutor's remarks did not breach the plea agreement, we need not address the State's claim that Hanson waived this issue by not contemporaneously objecting. Nor need we address Hanson's related claim that his trial counsel was ineffective for failing to object.

*By the Court.*—Judgment and order affirmed.