STATE of Wisconsin, Plaintiff-Respondent,

v.

Jesse LIUKONEN, Defendant-Appellant.

Court of Appeals

*No. 03–1539–CR. Submitted on briefs December 5, 2003.—
Decided July 22, 2004.*

2004 WI App 157

(Also reported in 686 N.W.2d 689.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Russell L. Hanson* of *Hanson Law Office*, Westby.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. Jesse Liukonen asserts that he is entitled to resentencing before a new judge because the prosecutor breached the plea agreement during the sentencing hearing by, in effect, asking the sentencing judge to impose a harsher sentence than the one the prosecutor agreed to recommend. We agree with Liukonen that the prosecutor breached the plea agreement and agree that remand is necessary. We do not, however, order resentencing, but rather remand for further proceedings on the topic of ineffective assistance of counsel. This is necessary because Liukonen's plea breach claim was waived by the omission of an objection, because we cannot tell from the record whether Liukonen's counsel had a strategic reason for

failing to object, and because the record does not disclose whether counsel consulted with Liukonen about the plea breach before proceeding with sentencing. As explained below, the need to resentence Liukonen before a new judge hinges on the outcome of that proceeding.

## *Background*

¶ 2. In 1998, over the course of approximately three weeks, Liukonen committed several life-endangering crimes. Alone or with an accomplice, he robbed four stores using a handgun. During one robbery, Liukonen held a gun to a female customer. During a different robbery, Liukonen pointed his gun at a store worker and threatened to blow his head off and, during that same robbery, forced a sixteen-year-old girl to bind the store manager with duct tape and then ordered the girl and another man into a walk-in freezer. As a result of these robberies and other acts, Liukonen was charged in three counties with five counts: armed robbery while concealing identity and false imprisonment while using a dangerous weapon; conspiracy to commit armed robbery; burglary (involving the theft of guns from a hardware store); and party to the crime of armed robbery with threat of force.

¶ 3. Liukonen and the prosecutor entered into a plea agreement that substantially reduced Liukonen's total penalty exposure and included a favorable sentencing recommendation. The prosecutor moved for dismissal of penalty enhancers and one charge altogether and, pertinent to this appeal, agreed to cap his sentencing recommendation at a total of seventeen

years of incarceration.[1] The prosecutor agreed to recommend ten years on Count 1, five years concurrent on Count 2, and seven years, consecutive to Counts 1 and 2, on Count 3. The prosecutor also agreed to recommend withheld sentences and probation on Counts 4 and 5.

¶ 4. Liukonen entered pleas in accordance with the plea agreement, and the case proceeded to sentencing. The following comments by the prosecutor are the focus of this case:

> Basically the more I looked at this case, the more I heard from the victims, the more I argue today, I realize that Mr. Liukonen I think got an extreme break by the system here. If you look at what he could have been facing, and Mr. Liukonen did admit to his crimes, he was caught essentially red handed with the one in Poynette, admitted to the ones here in Prairie du Chien and Sauk County, he would be facing years upon years upon years upon years of prison, just a phenomenal amount, especially when you take the underlying offense and threw in all the penalty enhancers, use of a dangerous weapon, concealing one's identity. He could have been facing years such that he may not have ever seen the light of day if he got sentenced even close to the maximum, but he was convicted of three counts which were charged here in Crawford County: The Food Pride robbery with the penalty enhancers, the false imprisonment at Food Pride, and the attempted robbery at Aldi's. He received some breaks from [prosecutors in Sauk County and Columbia County]. I have

---

[1] Three prosecutors from three counties were involved in plea negotiations, but for ease of discussion we talk as if there was a single prosecutor. Also, the sentencing court indicated that Liukonen was originally facing seven counts and was pleading to five. Our review of the record, however, reveals only six original charges arising out of five separate incidents.

gone through those. Essentially the defendant, even if the Court goes along with the proposed sentence recommendation, I think will be getting a tremendous break from the system, but it has been agreed to and the State will make the recommendation as agreed to by myself and the two assistant D.A.'s.

¶ 5. After hearing argument, the circuit court imposed a total twenty-year indeterminate sentence, consisting of twenty years on Count 1, five years concurrent on Count 2, twenty years concurrent on Count 3, and twenty years concurrent on Count 5. Liukonen also received a withheld sentence with ten years of probation on Count 4, consecutive to the sentences imposed on the other counts.

## *Discussion*

¶ 6. Liukonen contends he is entitled to resentencing because the prosecutor's comments at sentencing breached the plea agreement. The State correctly points out that there was no objection to the prosecutor's alleged breach and, therefore, the proper framework for analysis is ineffective assistance of counsel. At the same time, the State concedes that Liukonen's appellate brief, albeit minimally, does raise the issue of ineffective assistance of trial counsel. The State proposes, and we agree, that the proper course is to follow the analysis used in *State v. Howard*, 2001 WI App 137, 246 Wis. 2d 475, 630 N.W.2d 244:

> When [the defendant] failed to object to the State's alleged breach of the plea agreement at the sentencing hearing, he waived his right to directly challenge the alleged breach of the plea. Therefore, this case comes to us in the context of an ineffective assistance of counsel claim. We first consider whether the State breached the

plea agreement. If there was a material and substantial breach, the next issues are whether [defendant's] counsel provided ineffective assistance and which remedy is appropriate.

*Id.*, ¶ 12 (citation omitted); *see also State v. Naydihor,* 2004 WI 43, ¶ 9, 270 Wis. 2d 585, 678 N.W.2d 220. As will be seen, this case involves the additional question whether Liukonen agreed to a "new" plea agreement. *See State v. Sprang,* 2004 WI App 121, ¶¶ 27–28, 274 Wis. 2d 784, 683 N.W.2d 522.

¶ 7. Therefore, we first address whether there was a material and substantial breach of the plea agreement.

*Plea Agreement Breach*

¶ 8. As part of the plea agreement, the prosecutor agreed to "cap" his prison time recommendation at seventeen years, comprised of ten years on Count 1, five years concurrent on Count 2, and seven years, consecutive to Counts 1 and 2, on Count 3. Although the prosecutor made this recommendation at the sentencing hearing, Liukonen argues that resentencing before a new judge is required because the prosecutor breached the plea agreement by making comments implying that Liukonen deserved a longer sentence than the one the prosecutor formally recommended. We agree.

¶ 9. "[W]hether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law." *State v. Williams,* 2002 WI 1, ¶ 2, 249 Wis. 2d 492, 637 N.W.2d 733. "An actionable breach must not be merely a technical breach; it must be a material and substantial breach." *Id.*, ¶ 38. The principles applicable to the type

of breach alleged in this case were summarized in *State v. Hanson*, 2000 WI App 10, 232 Wis. 2d 291, 606 N.W.2d 278:

> If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." A prosecutor may not render a less than neutral recitation of the plea agreement. "*Santobello* proscribes not only explicit repudiations of plea agreements, but also 'end-runs around them.'" Thus, the State may not accomplish through indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended.

*Id.*, ¶ 24 (citations omitted).

¶ 10. The plea agreement breach topic we address today involves a "fine line." Plea agreements in which a prosecutor agrees to cap his or her sentencing recommendation and hopes the court will impose the full recommendation "represent a fine line for the State to walk." *Id.*, ¶ 27. When making sentencing arguments in these situations, nothing prevents prosecutors from supplying information that supports a harsher sentence than the one recommended by the prosecutor. In fact, a plea agreement

> "[may] not prohibit the [prosecutor] from informing the trial court of aggravating sentencing factors . . . . At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot 'be immunized by a plea agreement between the defendant and the state.' A plea agreement which does not allow the sentencing court to be appraised of relevant information is void [as] against public policy."

*Naydihor,* 270 Wis. 2d 585, ¶ 21 (quoting *State v. Ferguson,* 166 Wis. 2d 317, 324, 479 N.W.2d 241 (Ct. App. 1991)). Furthermore, nothing prevents a prosecutor from characterizing a defendant's conduct in harsh terms, even when such characterizations, *viewed in isolation,* might appear inconsistent with the agreed-on sentencing recommendation. For example, in *Ferguson,* 166 Wis. 2d 317, where the prosecutor agreed to recommend probation with an imposed and stayed sentence, there was no plea breach even though the prosecutor characterized the offenses as "the most perverted of all perverted sex acts and stated, this is the sickest case that I have seen or read about. If I refer to this defendant as 'sleaze,' I think that would be giving him a compliment." *Id.* at 319–20, 325.

¶ 11. Prosecutors may provide relevant negative information and, in particular, may provide negative information that has come to light after a plea agreement has been reached. However, prosecutors may not make comments that suggest the prosecutor now believes the disposition he or she is recommending pursuant to the agreement is insufficient. The supreme court has explained: "Although the State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing, the State may not imply that if the State had known more about the defendant, the State would not have entered into the plea agreement." *Williams,* 249 Wis. 2d 492, ¶ 50.

¶ 12. Given the latitude that prosecutors have during sentencing argument to highlight negative information about defendants, it is not surprising that prosecutors sometimes find it difficult to refrain from implicitly arguing for a harsher sentence than the

recommended sentence while at the same time urging the court to impose no less. We think the State's brief aptly explains the dilemma:

> [A]s is often the case when a prosecutor agrees to cap a sentence recommendation, the cap of 17 years' imprisonment [in this case] represented not only the maximum sentence the prosecutor was asking for, but also the minimum sentence that the prosecutor wanted the court to impose—the "floor," if you will, below which the prosecutor did not want the court to go . . . .
>
> [When] a prosecutor does not want the court to impose a sentence below that which the prosecutor has agreed to cap his or her recommendation[,] the prosecutor has a challenging task. He or she must abide by the sentencing recommendation and not request, either explicitly or implicitly, a greater sentence than he or she has agreed to recommend.

¶ 13. We acknowledge the challenge faced by prosecutors, but conclude that the prosecutor in this case crossed the "fine line." As discussed below, he did so by implicitly arguing that the court should impose a sentence exceeding the recommended sentence.[2]

---

[2] Our analysis does not involve an assessment of whether an alleged breach actually influenced the sentencing court. *See, e.g., Santobello v. New York*, 404 U.S. 257, 262–63 (1971) ("[The sentencing judge] stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts [either for resentencing by a different judge or plea withdrawal] . . . . We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on

¶ 14. For the most part, the prosecutor's remarks constituted fair comment on the seriousness of Liukonen's conduct, criminal history, and character, even when the prosecutor employed strong language. However, the prosecutor also talked about information he had learned and testimony he had heard after he entered into the plea agreement, and then used language suggesting he now thought the agreement was too lenient.

¶ 15. After talking about the presentence report —which the prosecutor interpreted as revealing an admission by Liukonen that he was on an escalating path to increasingly dangerous behavior—and referencing the chilling sentencing hearing testimony of three victims, the prosecutor stated:

> Basically the more I looked at this case, the more I heard from the victims, the more I argue today, I realize that Mr. Liukonen I think got an extreme break by the system here . . . . He could have been facing years such that he may not have ever seen the light of day if he got sentenced even close to the maximum, but he was convicted [pursuant to the plea agreement] of three counts . . . . He received some breaks from [prosecutors in Sauk County and Columbia County]. I have gone through those. Essentially the defendant, even if the Court goes along with the proposed sentence recommendation, I think will be getting a tremendous break from the system, but it has been agreed to and the State will make the recommendation as agreed to by myself and the two assistant D.A.'s.

These comments communicated to the circuit court that the prosecutor was making the plea agreement recommendation because he was bound to do so, not

the sentencing judge."); *see also State v. Thompson*, 146 Wis. 2d 554, 565–66, 431 N.W.2d 716 (Ct. App. 1988).

because he thought it constituted an appropriate prison term. The State's brief admits as much:

> It may well be that the prosecutor's comments at sentencing—particularly those that suggested that Liukonen would be getting "an extreme break" or "a tremendous break" if the court went along with the prosecutor's recommendation that it impose a sentence of 17 years' imprisonment—*implied that Liukonen deserved harsher punishment than that which the prosecutor had agreed to recommend.* The critical question is not *whether the prosecutor's comments implied that —they probably did*—but rather whether such an implication breached the plea agreement under the circumstances of this case.

(Emphasis added.) The question, of course, is whether the prosecutor's comments "implied that" the prosecutor believed Liukonen deserved a harsher sentence than the one the prosecutor had agreed to recommend. Justice Wilcox aptly summarized this point in his separate opinion in *Williams*:

> I concede that the prosecutor's statements could be characterized as not enthusiastically supportive of the plea agreement, but there is no requirement that they be enthusiastic. *Poole*, 131 Wis. 2d at 364. The test is only whether or not the recommendation was undercut by the prosecutor's comments—whether the prosecutor explicitly or implicitly suggests that she has changed her mind about her recommendation.

*Williams*, 249 Wis. 2d 492, ¶ 71 (Wilcox, J., concurring in part, dissenting in part). As we have explained, that is what occurred here.

¶ 16. The case law on this topic does not put well-meaning prosecutors in unresolvable quandaries.[3] Here, for example, the prosecutor might have made almost the same sentencing argument if he had also effectively communicated to the sentencing court that, even taking into account new information and the testimony of victims, he still believed the seventeen-year recommendation was an appropriate sentence. The prosecutor could have asserted that the recommendation was appropriate and at the same time argued that the circumstances were so severe that the court should impose no less. Instead, the prosecutor all but told the court he was only making the seventeen-year recommendation because of his plea agreement obligation.

¶ 17. Accordingly, we conclude the prosecutor breached the plea agreement by making comments that implied that Liukonen should receive a harsher sentence than the one the prosecutor had agreed to recommend.

### *Whether Liukonen Received Ineffective Assistance of Counsel and Whether Liukonen Agreed to Proceed Despite the Plea Breach*

¶ 18. There was no objection to the prosecutor's breach of the plea agreement.[4] The breach issue, there-

---

[3] We do not suggest that the prosecutor in this case was not well intended. We cannot determine from a cold record what was in the prosecutor's mind; we only conclude that his words crossed the "fine line." We observe, however, that abiding by a plea agreement is most problematic when prosecutors attempt to abide by the letter of an agreement and at the same time hope to subtly persuade the court to impose a harsher sentence.

[4] This is not to say that Liukonen's attorney ignored the prosecutor's comments. As in *Sprang,* trial counsel here began

fore, was waived, and the question arises whether Liukonen's trial counsel performed deficiently when counsel failed to object to the prosecutor's comments. A defendant alleging ineffective assistance of counsel bears the burden of showing that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

■

¶ 19. On this ineffective assistance topic, we follow the analysis we used in *Howard*, 246 Wis. 2d 475. In *Howard*, after concluding that the prosecutor breached the plea agreement during sentencing arguments, we addressed whether the defense attorney rendered ineffective assistance because he failed to object to the breach. *Id.*, ¶¶ 20–21. As here, in *Howard* there had been no *Machner* hearing before the appeal.[5] In keeping with *Howard*, we conclude that prejudice can be presumed if Liukonen can establish deficient performance, and we reverse and remand for a *Machner* hearing on that issue. *See Howard*, 246 Wis. 2d 475, ¶ 29.

¶ 20. There is, however, a distinct ineffective assistance issue that may prove to be dispositive on remand. Even if Liukonen's trial counsel had a sufficient strategic reason for failing to object to the breach and, thus, did not perform deficiently, Liukonen may nonetheless be entitled to resentencing if his counsel did not consult with him about foregoing an objection. *See Sprang*, 274 Wis. 2d 784, ¶¶ 27–29.

his argument by questioning whether the prosecutor had breached the agreement, but did not actually lodge an objection. *See State v. Sprang*, 2004 WI App 121, ¶ 11, 274 Wis. 2d 784, 683 N.W.2d 522.

[5] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶ 21. In *Sprang*, we explained that when a prosecutor breaches a plea agreement by arguing for a harsher sentence than the one the prosecutor agreed to recommend, the agreement has "morphed" into a new agreement. Thus, defense counsel must consult with the defendant and receive verification that the defendant wishes to proceed with the "new" plea agreement. *See id.*, ¶ 28. The *Sprang* decision teaches that even a strategically sound decision by defense counsel to forgo an objection to a prosecutor's breach *without consulting with the defendant* constitutes deficient performance because it is "tantamount to entering a renegotiated plea agreement without [the defendant's] knowledge or consent." *Id.*, ¶ 29. Further, "[b]ecause counsel's deficient performance involved a breach of a plea agreement, [the defendant] is automatically prejudiced." *Id.*

¶ 22. The transcript in this case does not indicate whether Liukonen's counsel consulted with Liukonen regarding the breach during the sentencing hearing. Therefore, on remand, it should be determined whether such consultation occurred and whether Liukonen agreed to proceed despite the breach. If both did not occur, Liukonen is entitled to resentencing before a new judge regardless whether his counsel had a valid strategic reason for failing to object to the breach.

*By the Court.*—Order reversed and cause remanded with directions.