DAVID T. PROSSER, J.
¶ 98. (dissenting). The issue in this case is whether the prosecutor materially and substantially breached the plea agreement when he made statements that implied that the sentencing recommendation was too lenient. The majority concludes that the prosecutor did not undercut the plea agreement when he stated that the felony classifications of the crimes charged did not do the offenses justice, when he endorsed the victim's statement that arguably called for a longer term of confinement than the prosecutor agreed to recommend, and when he characterized Bokenyi's threats to shoot police officers as "the most frightening for me." Because I conclude that the prosecutor materially and substantially breached the plea agreement, and Bokenyi's counsel provided ineffective assistance in failing to object to the breach, I respectfully dissent.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 99. William Bokenyi (Bokenyi) was charged with ten offenses stemming from an incident in which he threatened to kill his wife and son while he was *68 wielding two knives. Seven of the ten offenses were felonies. Fourteen months later, Bokenyi pled guilty to first-degree recklessly endangering safety, a Class F felony (Count l),[1] intimidating a victim, a Class G felony (Count 3),[2] and failing to comply with an officer's attempt to take a person into custody, a Class I felony (Count 4).[3] All other offenses were dismissed but read in for purposes of sentencing. Bokenyi also had a prior conviction for first-degree recklessly endangering safety as well as a non-violent federal felony.
¶ 100. Bokenyi's pleas were part of a plea bargain in which the State agreed that its sentencing recommendation "would be capped ... at the high end range of the PSI [Pre-Sentence Investigation]."
¶ 101. Bokenyi committed his offenses on August 1, 2010. He entered his plea on September 30, 2011. Because Bokenyi was in custody from the date of his offenses, he was entitled to receive 14 months of credit on any sentence of confinement he received as of the date of his plea. Every day from the date of his plea through the date of his sentence added another day of sentence credit.
¶ 102. The parties and the court agreed upon a PSI. It arrived on December 5, 2011. Sentencing was then set for January 23, 2012. Consequently, Bokenyi was entitled to 540 days of credit against his sentence on the day he was sentenced.
¶ 103. It is impossible to know what the prosecutor anticipated in terms of a PSI sentencing recommendation. The maximum period of "imprisonment" for the three felonies that Bokenyi pled to was 26 years. Wis. *69 Stat. § 939.50(3)(f)-(g), (i). This translates into a maximum period of confinement of 14 years. Wis. Stat. § 973.01(2)(b)6m.-7., 9.
¶ 104. The PSI recommended three to four years of initial confinement, plus many years of extended supervision. Four years of confinement was less than one-third of the maximum confinement that the court could impose.
¶ 105. Under the plea bargain, the prosecutor was bound to recommend no more than four years of initial confinement. But if the court imposed four years of initial confinement (365 x 4 = 1460 days), the defendant would be released from confinement in 920 days (1460 - 540 = 920), a little more than two and a half years after he was sentenced.
¶ 106. There is no dispute that the prosecutor's explicit recommendation complied with the plea agreement; that is, he did not ask for more than four years of initial confinement.
¶ 107. The question is whether he breached the plea agreement by implying in his sentencing remarks that this four-year recommendation was too lenient— that the defendant should receive a longer sentence.
CONTROLLING PRINCIPLES OF LAW
¶ 108. The seminal case on a prosecutor's obligation to keep his part of a plea bargain is Santobello v. New York, 404 U.S. 257 (1971). "[P]lea bargaining," the Court said, "is an essential component of the administration of justice." Id. at 260. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.
*70 ¶ 109. Santobello was not a unanimous opinion because the justices disagreed about the defendant's remedy for a prosecutor's breach. But all justices agreed that the breach of a plea agreement requires a remedy. Justice Douglas observed that lower courts "have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain." Id. at 266 (Douglas, J., concurring). Justice Marshall concluded that a defendant "must be permitted to withdraw his guilty plea," id. at 267 (Marshall, J., concurring in part, dissenting in part), when the prosecutor breaches the plea agreement.
¶ 110. This court has summed up the law: A defendant "has a constitutional right to the enforcement of a negotiated plea agreement." State v. Williams, 2002 WI 1, ¶ 37, 249 Wis. 2d 492, 637 N.W.2d 733 (footnote omitted). Inasmuch as this basic principle is beyond dispute, the question becomes whether a prosecutor's comments constitute a breach.
¶ 111. At sentencing, "[t]he State must balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." Id., ¶ 44. A prosecutor may not undercut an express sentencing recommendation by insinuating that it is too lenient. See id., ¶ 42; State v. Ferguson, 166 Wis. 2d 317, 322, 479 N.W.2d 241 (Ct. App. 1991) (citation omitted) (stating that a prosecutor may not "convey a message to the trial court that a defendant's actions warrant a more severe sentence than that recommended"). Implying that a sentencing recommendation is insufficient is a material and substantial breach because it "defeats the benefit for which the accused bargained." Williams, 249 Wis. 2d 492, ¶ 38 (footnote omitted).
*71 ¶ 112. Thus, I agree completely with paragraph 43 of the majority opinion:
It is certainly true that" '[e]nd runs' around a plea agreement are prohibited." Williams, 249 Wis. 2d 492, ¶ 42 (citing State v. Hanson, 2000 WI App 10, ¶ 24, 232 Wis. 2d 291, 606 N.W.2d 278). "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." Id. (quoting Hanson, 232 Wis. 2d 291, ¶ 24; citing Ferguson, 166 Wis. 2d at 322).
¶ 113. A defendant is not entitled to relief from a prosecutor's comments or conduct at sentencing unless a breach of the plea agreement is material and substantial. Williams, 249 Wis. 2d 492, ¶ 38. "[Wjhether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law." Id., ¶ 2.
¶ 114. When a prosecutor violates the principles discussed above in paragraph 112, that violation constitutes a material and substantial breach of the plea agreement.
THE SENTENCING HEARING
¶ 115. I turn now to the sentencing hearing. When the court reviews a sentencing transcript to determine whether there was a material and substantial breach of the plea agreement, it examines the whole proceeding. Id., ¶ 46. The court closely examines the sentencing transcript to determine whether the prosecutor was faithful to the bargain.
¶ 116. Circuit Judge Molly E. GaleWyrick began the sentencing hearing by listing Bokenyi's convictions and the dismissed charges:
*72 Mr. Bokenyi was convicted on September 30, 2011 of Count 1, first degree reckless endangering safety. That is a Class F felony. It's punishable by 12 years and 6 months in prison, divided 7.5 in and 5 out. Count 3 is intimidate a victim, use or attempted force. This is a Class G felony. It is punishable by imprisonment not to exceed 10 years. It's 5 in and 5 out. And Count 4 failure to comply with an officer. That's a Class I felony, punishable by 3.5 years in prison. 1.5 in and 2 out. There were additional counts which were read-in for purposes of sentencing. Count 2 is another count of intimidate a victim, use or attempt of force. Counts 5 through 7, battery to law enforcement officer/firefighter. Count 8, disorderly conduct. Count 9 resisting or obstructing. Count 10 endangers safety with a dangerous weapon.
Shortly after the judge read the charges, the prosecutor read a letter from Sherri Bokenyi (Sherri), the defendant's wife and the principal victim of his crimes:
To Judge GaleWyrick, to whom it may concern. It has been a long wait for this day, yet I'm still nervous and scared. I want Bill to serve time due to him that justifies his behavior. But also I want him to get help while he is in prison. Myself and our son [MB], are afraid for the day Bill will get let out because we are unsure of what he would be capable of doing. I prefer that we could live fearlessly while our son MB only 11 is growing and in school. Thank you. [Sherri] Bokenyi.
¶ 117. The prosecutor then described the offense. He described how Bokenyi had two knives in his hands when officers arrived and how he slammed the door when the officers told him to drop the knives and get on the floor. The prosecutor described how the officers heard Bokenyi yell that he was going to kill his wife and how the officers had to shoot Bokenyi because he would not comply with their orders to drop the knives. The *73 prosecutor recounted Sherri's testimony about how Bokenyi asked repeatedly whether Sherri or their son should die first. He then described how Bokenyi's son dialed 911, and he commented that the child would have to live with the memory of that event for the rest of his life.
¶ 118. All this was permissible. The prosecutor needed to support his recommendations by establishing the gravity of the offenses. The description of the incident demonstrated the severity of the crimes for which Bokenyi was being sentenced. Had the prosecutor stopped there, this would be an easy case. However, the prosecutor went on to make three errors. Especially when these errors are considered together — considered cumulatively — they constitute a material and substantial breach of the plea agreement.
COMMENTS ABOUT THE CRIMES' SEVERITY
¶ 119. The prosecutor's first breach of the plea agreement occurred when he described the severity of the crimes as follows:
The three convictions that [Bokenyi] is being sentenced on today is a first degree reckless endangerment, a 12 and a half year felony, and intimidation of a victim, a 10 year felony and failure to comply with a law enforcement officer, a 3 and a half year felony. I think the felony classifications obviously indicate the extreme seriousness of these offenses that night. But to be honest, I don't think they really do them justice in terms of how serious this was.
This was a man who had history and I think it's backed up not only from the PSI but in what Mr. Smestad has provided. A history of homicidal thoughts or ideations about killing his wife and killing his son. *74 And I believe, it's the state's contention that he was intent on carrying out that ideation that night and if not for law enforcement's interceding, it may well have been carried out.
So although these are three felonies and these are very serious crimes, I don't think to be honest with you that they even come close to telling what could have happened that night and what might have happened that night and just in and of itself the seriousness of what did happen that night. It's all exacerbated by this all happening in front of this couple's child. He was I believe 10 at the time when this happened. He's now 11.
¶ 120. These paragraphs are significant in several ways.
¶ 121. The prosecutor repeated the offenses and the penalties for the offenses, even though the court had gone over the same information moments earlier. He repeated the maximum period of "imprisonment." Then he said that "the felony classifications obviously indicate the extreme seriousness of these offenses." But, "I don't think they [e.g., the three felony convictions] really do . . . justice in terms of how serious this was."
¶ 122. After describing Bokenyi's homicidal thoughts about "killing his wife and son," the prosecutor again offered his opinion that "although these are three felonies and these are very serious crimes, I don't think. . . that they [e.g., the three felony convictions] even come close to telling what could have happened that night."
¶ 123. No doubt the prosecutor is permitted to point out the seriousness of crimes, and no doubt the prosecutor is entitled to focus the court's attention on the future. But is the prosecutor entitled to convey the view that the defendant's conduct was more grievous than what is reflected in the crimes to which the *75 defendant pled guilty, especially when that view is connected with concern about the future?
¶ 124. Here, when the prosecutor listed the maximum terms of imprisonment and then immediately stated that the felony classifications do not sufficiently indicate the seriousness of the offenses, he implied that Bokenyi deserved longer sentences than the maximum sentences for the three counts to which he pled.
¶ 125. In State v. Liukonen, 2004 WI App 157, ¶¶ 15-17, 276 Wis. 2d 64, 686 N.W.2d 689, the court of appeals determined that a prosecutor materially and substantially breached a plea agreement when he suggested that the defendant deserved a more stringent sentence than the plea agreement provided. In Liukonen, the prosecutor stated that "even if the Court goes along with the proposed sentence recommendation, I think [the defendant] will be getting a tremendous break from the system, but it has been agreed to . . . ." Id,., ¶ 15. Similarly, in the present case, the prosecutor implied that he thought the plea agreement was too lenient by suggesting that the felony classifications of the charges do not do justice to Bokenyi's offenses.
¶ 126. Unlike the majority, I do not believe the prosecutor was merely communicating the State's position about the serious nature of the offenses. See majority op., ¶ 55. Nor do I agree with the majority's discussion of the circuit court's observations about the prosecutor's comments. See majority op., ¶ 56. The circuit court said, "[The prosecutor is] not talking about the 26 years not doing justice to the crimes. He's talking about. .. the A through I classification system not doing justice to how serious the conduct was in this particular case." What is the difference? The classification system deals with a range of penalties, and the *76 prosecutor indicated in some manner that the system's penalty structure was "not doing justice to how serious the conduct was in this particular case." If the system's classification structure is not adequate, how can a sentence of confinement of less than a third of the maximum authorized by the system be adequate?
¶ 127. Although prosecutors must walk a fine line as they make arguments at sentencing, Williams, 249 Wis. 2d 492, ¶ 44, the line here is clear: a prosecutor may not suggest that the defendant's conduct was in some way more serious than the charges to which he pled. Such a suggestion implies that the plea agreement is insufficient — a suggestion that constitutes a material and substantial breach.
THE COMMENTARY ON THE VICTIM'S LETTER
¶ 128. The prosecutor breached the plea agreement by endorsing the victim's statement that he had read earlier in the hearing:
Finally, there's the need to protect the public or the public's interest in rehabilitation of the defendant and I think this overwhelmingly comes down to the protection of the public interest. The protection of the public, being [Sherri] Bokenyi and their son. They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school. She has a right to live not in fear that Mr. Bokenyi, when he gets out, is going to come looking for her and to finish what he's attempted at least one other time before.
(Emphasis added.)
¶ 129. In her letter, Sherri mentioned that her son was 11 years old. The prosecutor repeated the child's age in the previously quoted passages. The idea that Sherri has a right to live without fear while her son *77 is in school suggests that she has a right to live without fear until her son turns 18 — the age at which students traditionally finish high school. Thus, by agreeing with Sherri, the prosecutor suggested that Bokenyi should be confined for roughly seven years, a suggestion that undermines the recommendation of four years of initial confinement.
*76 76
*77 ¶ 130. It must be remembered, once again, that if the defendant received only four years of initial confinement, he would be scheduled for release in a little more than two and a half years. I am unable to agree with the majority that the prosecutor's recommendation of four years confinement was "seemingly consistent with the victim's wishes," majority op., ¶ 68, inasmuch as the victim specifically asked to "live fearlessly while our son M.B.[,] only ll[,j is growing and in school."
¶ 131. The victim expressed fear in her letter "for the day Bill will get let out."
¶ 132. Thus, when the prosecutor said, "They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school," he was impliedly asking for more than two and a half years of additional confinement.[4] When the prosecutor referred to "when he gets out," he was not expressing his confidence in extended supervision.
¶ 133. The majority dismisses the implication and effect of the prosecutor's statements by emphasizing victims' rights.
*78 ¶ 134. While victims' rights are unassailably important, they do not eclipse the rights of defendants. The Wisconsin Constitution protects victims' rights, but it also explicitly states, "Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law." Wis. Const. art. I, § 9m. Thus, Santobello and its progeny continue to require prosecutors to fulfill promises made pursuant to plea agreements. See Santobello, 404 U.S. at 262. In fact, the advent of victims' rights laws infuses plea bargains and prosecutor conduct at sentencing with greater importance because a victim's statement or recommendation might conflict with the plea agreement. Thus, the prosecutor must take care to avoid endorsing a victim's statement that is inconsistent with a plea agreement. In addition, it may be prudent for someone other than the prosecutor to read a victim's statement, especially in cases where the victim explicitly or implicitly makes statements contrary to the plea agreement.[5]
INCIDENT AT POLK COUNTY JAIL
¶ 135. The prosecutor's final error arose when he discussed an incident that occurred seven months before Bokenyi entered his plea and almost one year before the sentencing hearing. The prosecutor stated:
*79 What is again perhaps the most frightening for me is to read an incident report from the Polk County Jail on February 11th of 2011. A jailer ... indicates that on the above date I was doing med pass on the maximum part of the jail. Inmate Bokenyi came out for the evening meds and I asked him how he was doing. He stated okay, but he was still here and that he could not wait for the time that he was out of here so he could quote "shoot up some cops" end quote. I asked him why he would do that. He said they all deserved it. And making conversations with him I stated that wouldn't he rather just get out and enjoy being out then [sic] risk coming back in. He stated that next time he would not be coming back, and he would also shoot anyone who got in his way while he was shooting at the cops. There is an absolute necessity to protect the public from William Bokenyi.
(Emphasis added.)
¶ 136. Reference to the jail incident came not long after the prosecutor said that Bokenyi had a history "of homicidal thoughts or ideations about killing his wife and killing his son." Then he added:
[M]any of his issues with his mental health ... arise out of suicidal and homicidal ideations, both in regard to his wife and in regard to his son. He talks about having visions of slitting their throats .... [Mrs. Bokenyi] has a right to live not in fear that Mr. Bokenyi, when he gets out, is going to come looking for her and to finish what he's attempted at least one other time before.
¶ 137. The jail incident broadened the defendant's threats from his family to the police, and it enhanced a recurrent theme in the PSI.
¶ 138. Immediately after reference to the jail incident, the prosecutor made his recommendation:
*80 On Count 1 the state requests a sentence of 8 years. 4 of initial confinement and 4 of extended supervision.
On Count 3 state's requesting withheld sentence and for 5 years probation consecutive to Count 1.
And on Count 4 the state is requesting for a withheld sentence, he be placed on probation for 3 years, consecutive to Count 1, concurrent with Count 3, with all the conditions laid out on page 3 of the PSI.
¶ 139. There is an unsettling incongruity between the prosecutor's statements about multiple frightening incidents and the need to protect the public, on the one hand, and the recommendation of only four years of initial confinement, on the other. The discussion of the jail incident came after a description of the heinous crime, after a discussion of a past incident in which Bokenyi threatened his wife and police with a firearm in Ashland, and after a description of Bokenyi's homicidal thoughts and mental issues.
¶ 140. Thus, the prosecutor's sentencing recommendation did not come with a bang, with a crescendo; it came with a whimper.
¶ 141. It is true that a prosecutor must demonstrate why probation is not appropriate and why a period of confinement is justified. See State v. Gallion, 2004 WI 42, ¶ 44, 270 Wis. 2d 535, 678 N.W.2d 197 (citations omitted) (internal quotation marks omitted) (stating that the court should impose "the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" and "should consider probation as the first alternative"). However, in the present case, there were more than enough negative facts to support the recommended sentence without the prosecutor characterizing *81 the jail incident as "the most frightening." It was not necessarily improper for the prosecutor to mention the jail incident, but in the context in which this argument appears — right before the recommendation of four years of initial confinement — it undercuts the prosecutor's recommendation.
¶ 142. The majority quotes Grant v. State, 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976), for the proposition that it is against public policy for prosecutors to agree not to discuss information relevant to sentencing. Majority op., ¶ 72. However, there is no allegation or suggestion that the defendant asked the prosecutor to refrain from bringing relevant information to the court's attention in this case. Instead, the defendant argues that the prosecutor's characterization of the jail incident as "the most frightening for me" breached the plea agreement. I agree.
¶ 143. As a practical matter, if the prosecutor had known about the jail incident at the time of plea negotiations, he probably should have included in the plea agreement the fact that he planned to mention the incident at sentencing.
¶ 144. After the parties concluded their arguments at the sentencing hearing, the circuit court said, "I agree with the state that this is a very serious crime. It's a Class F felony but that doesn't do it justice." (Emphasis added.) On Count 1, the court sentenced Bokenyi to seven years and five months[6] of initial confinement and five years of extended supervision concurrent with Counts 3 and 4. On Count 3, the court sentenced Bokenyi to five years of initial confinement *82 and five years of extended supervision concurrent with Counts 1 and 4. On count 4, Bokenyi received a sentence of one year of extended supervision concurrent with Counts 1 and 3.
¶ 145. Whether the court was influenced by the prosecutor's breach is not relevant to this analysis; it is important only that the prosecutor materially and substantially breached the plea agreement. Given that there was a breach, I turn to whether Bokenyi's counsel was ineffective for failing to object.
INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 146. Ordinarily, to prove that counsel was ineffective, a defendant must demonstrate: (1) that his attorney rendered deficient performance; and (2) that counsel's deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Although a defendant must normally prove prejudice to prevail on a claim of ineffective assistance of counsel, when a prosecutor materially and substantially breaches a plea agreement, the court presumes prejudice. State v. Smith, 207 Wis. 2d 258, 281-82, 558 N.W.2d 379 (1997). Consequently, Bokenyi needed to prove only that his counsel was deficient to prevail in this case. To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.
¶ 147. At the hearing on Bokenyi's postconviction motion, the attorney who represented Bokenyi at sentencing testified that he did not believe the prosecutor breached the plea agreement. When an attorney fails to notice that the prosecutor has materially and substantially breached the plea agreement, his conduct falls *83 below what is objectively reasonable. Therefore, I conclude that Bokenyi's counsel provided ineffective assistance and would remand the case for resentencing.
CONCLUSION
¶ 148. The prosecutor made a very effective, very powerful argument. In most circumstances, his argument would have been welcome and entirely appropriate. In this case, however, the prosecutor entered into an ill-advised plea bargain in which he ceded his sentencing recommendation prerogatives to the writer of the PSI. When the writer recommended a relatively light sentence, the prosecutor faced a serious dilemma. The reality of his dilemma cannot be ignored.
¶ 149. Nonetheless, plea agreements are not to be taken lightly. When the State agreed to limit its sentencing recommendation to the upper range from the PSI in exchange for Bokenyi's guilty pleas, it was required to uphold its end of the bargain. The State's implicit suggestions that the sentencing recommendation was too lenient constituted a material and substantial breach of the plea agreement, and Bokenyi's counsel was ineffective for failing to object to it.
¶ 150. I take no pleasure in this dissent because in many ways I identify with the prosecutor. The problem is that if the prosecutor's comments here are approved as being consistent with the obligations of the plea agreement, future defendants will not be able to rely on the benefits they bargained for.
¶ 151. The integrity of the criminal justice system must be preserved.
¶ 152. For the foregoing reasons, I respectfully dissent.
*84 ¶ 153. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.

 Wis. Stat. § 941.30(1).

 Wis. Stat. § 940.45(1).

 Wis. Stat. § 946.415(2).

 The majority agrees with the circuit court's determination that the prosecutor was permitted to reference the victim's statement without augmenting it. Majority op., ¶ 67. However, the prosecutor did not merely reference the statement; he agreed with it. Even absent augmentation, it is impermissible for a prosecutor to agree with a victim's statement that contradicts a plea agreement.

 Although the circuit court concluded that it was not a material and substantial breach for the prosecutor to read the victim's statement, the court did note:
Now in hindsight it would have been more appropriate for us to have brought the victim witness coordinator into court to read this statement or someone else other than the prosecutor. I'll take responsibility for that. I should have seen the potential for that being misunderstood or mischaracterized, and should have asked that some other person read it.

 The court later amended the judgment of conviction to sentence Bokenyi to seven years and six months of initial confinement and five years of extended supervision.