STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian W. SPRANG, Defendant-Appellant.

Court of Appeals

*No. 03–2240. Submitted on briefs April 22, 2004.—Decided May 26, 2004.*

2004 WI App 121

(Also reported in 683 N.W.2d 522.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Brian W. Sprang pled guilty to and was convicted of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (2001–02).[1] Sprang appeals from that conviction and from a postconviction order denying his motion for a

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

new sentencing hearing on grounds that the State's remarks at sentencing violated the terms of his plea agreement.

¶ 2. We conclude that the prosecutor's remarks constituted a material and substantial breach of the parties' plea agreement. Although Sprang's counsel chose not to object to the prosecutor's remarks for reasonable strategic reasons, we nevertheless conclude that his counsel's acquiescence to the revised plea agreement without consulting with Sprang or gaining his consent constituted deficient performance. We further conclude that counsel's failure prejudiced Sprang. We reverse the judgment and order and remand for a new sentencing proceeding before a different judge.

## FACTS

### Procedural History

¶ 3. On March 8, 2002, the State charged Sprang with one count of sexual contact with a child who has not attained the age of thirteen years contrary to Wis. Stat. § 948.02(1). Following a preliminary hearing on April 1, 2002, Sprang was bound over for trial. The State subsequently issued an Information reciting an additional charge of sexual contact with a child contrary to § 948.02(1).

¶ 4. On September 10, 2002, Sprang entered a guilty plea to one count of first-degree sexual assault of a child. Sprang's plea questionnaire was accompanied by an August 27, 2002, letter from the State confirming the parties' agreement that Sprang would plead to one count of first-degree sexual assault of a child and the remaining charge of sexual assault of a child would be dismissed and read in, as would an outstanding bail

788

jumping charge in another case. Pursuant to the agreement, the State would "recommend probation but is free to argue length, structure, terms and conditions of probation," including the length of any jail condition. At the plea hearing, the State requested both a presentence investigation (PSI) and a sex offender evaluation.

¶ 5. Prior to sentencing, the trial court had received both the PSI report and the sex offender assessment. Both reports disagreed with the plea agreement's sentencing recommendation and the PSI report recommended prison time.[2] At sentencing, the court rejected the plea recommendation stating that probation with jail time "isn't going to work" and that a period of custody and extended supervision was necessary for rehabilitation. The court sentenced Sprang to a twelve-year bifurcated sentence with four years of confinement followed by eight years of extended supervision.

¶ 6. On June 26, 2003, Sprang, by his postconviction counsel, filed a WIS. STAT. RULE 809.30 motion for postconvicton relief requesting a resentencing before a different judge.[3] Sprang contended that the State breached the plea agreement by arguing at sentencing in a manner that undermined its recommendation for probation. Sprang also raised an ineffective assistance of counsel argument based on his defense counsel's

---

[2] The PSI report states a recommendation of "a total sentence in the area of 8 to 10 years with a period of Initial Confinement in a range of 3 to 5 years followed by the balance on extended supervision." The sexual offender evaluation, while not making an express recommendation of prison time, notes Sprang's "high risk for reoffense" and recommends inpatient sex offender treatment.

[3] Sprang also requested an additional thirty-two days of sentence credit under WIS. STAT. § 973.155. This request was granted by the trial court and is not at issue on appeal.

failure to object to the prosecutor's remarks. Following a postconviction motion hearing at which Sprang's defense counsel testified, the trial court denied Sprang's motion. Sprang appeals.

*Prosecutor's Remarks*[4]

¶ 7. At the sentencing hearing, the prosecutor began by correctly stating the terms of the plea

[4] While we summarize the prosecutor's remarks in the body of the decision, the prosecutor's remarks at sentencing are set forth in their entirety below:

[PROSECUTOR]: I have received and I have reviewed the [PSI] at some length. I actually had this for about a week, I think. One comment that I made to the Court, Your Honor, is the agreement did take into account some other issues that aren't taken into account when one merely assesses for purposes of sentencing.

The agreement takes into account the impact on the victim, other issues of proof and those—those aren't as paramount when preparing an assessment like Mr. Gayle does. I mean he tries to look at this independent of those agreements.

What is clear, Your Honor, is that the defendant, from reading the presentence and specifically from reading the [sexual offender] evaluation by Mr. Gayle, the defendant is certainly high risk. If the Court accepts the recommendation of the State and places him on supervision, I ask the Court give him the maximum period of jail available.

I would ask that the Court give him a very long sentence structure, and I'd ask that the Court impose and stay, rather than withhold, a sentence structure, because I think the defendant, when one looks at all the problems he has from the evaluations, this defendant needs to know what's going to happen to him.

That said, let me point out a couple things about—about the case and its impact as it has been relayed to me. This has had a significant impact, Your Honor, on the other people involved. The mother of the victim had planned on which to be here, but her blood pressure has shot up over two hundred and she had to seek medical attention yesterday and is unable to be here, indicating that this has had an incredibly disruptive impact on her life as

agreement—essentially that the State would be recommending probation. He then noted the State's receipt of

evidenced by what it's done to her blood pressure. The grandmother is here indicating to me—indicated this has been difficult on all the family.

When I—when I read through the Sex Offender Assessment, Your Honor, one of the things I found troubling was that while the defendant came in here and entered a guilty plea, he then turns around and gives an account that, quite frankly, doesn't fit. It becomes contradictory, not only with the victim but with other accounts. He actually contradicts himself at points. He shows no sense of responsibility. He shows no understanding of his problem, no insight, and that does become quite troubling, and that's why any supervision that would happen would have to be of an incredibly strict nature, Your Honor.

As to additional character of the offender, one need only look at page four to realize that trouble has been a consistent pattern —that's page four of the presentence—to realize that trouble has been a consistent pattern within Mr. Sprang's life, although I must say, as he got toward the later 90's, it was slowing down to—to a great extent, but certainly did not stop.

Additionally, in terms of his character, he has not traditionally done well with—with supervision and has not seemed to show insight into his own problems. Obviously, looking at the seriousness of the offense, Your Honor, this is a very serious offense. It—it is one of the most serious offenses that the State can charge in this state and carries with it the second highest penalty that a non-enhanced felony can carry. That is, it's a class B felony.

There is certainly a need to protect the public, and, hopefully, appropriate treatment can do that. There is one thing that I was concerned about, because I know that there wasn't—the presentence and the evaluation by Mr. Gayle do not agree with the plea agreement that was made. Ms. Czechanski, the author, did a thorough presentence and makes a recommendation referring to initial confinement in the three- to five-year range.

I asked her a question, because I had previously been given answers to—to the question of how treatment would run within the prison, and I asked her if she could check with them to see what they would say in terms of, you know, what kinds of time frame we're looking at, Judge, and they have become even more vague than I used to get for an answer.

the PSI report and the sexual offender evaluation and his assessment from those documents that Sprang is "certainly high risk." The prosecutor then requested that "[i]f the Court accepts the recommendation of the State and places [Sprang] on supervision, I ask the Court give him the maximum period of jail available." He additionally requested that the court impose a lengthy imposed and stayed prison sentence so Sprang, with all of his problems, would know what is going to happen if he should ever be revoked.

¶ 8. The prosecutor then went on to discuss the impact of Sprang's offense on the victim and her family and the sex offender assessment. With respect to the sex offender assessment, the prosecutor noted that Sprang's protestations of innocence to the assessor conflicted with his guilty plea and indicated that Sprang had no sense of responsibility for his conduct and no insight into his problems. Based on that assessment, the prosecutor requested supervision of an "incredibly strict nature."

What Ms. Czechanski related to me was that six to nine months to staff someone. That is, to get them into any program to figure out where they're going to send them. Treatment programs, depending on how they staff, run from six months to four years, and evidently not an ability, you know, prior to that staffing to tell you whether this is a six-month or four-month, and obviously that person needs to have a chance to be evaluated for [ch.] 980 purposes based upon this particular charge.

I pass that along to the Court for whatever help it may or may not be in terms of if the Court, you know, chooses to send him to prison at this point or chooses to accept the plea agreement and is looking to—you know, how do we set up a structure on an imposed and stayed. I think it's relevant to both those factors. That's all, Your Honor.

¶ 9. The prosecutor then moved on to statements he said would address Sprang's character, the seriousness of his offense and the need to protect the public. The prosecutor noted that Sprang had not traditionally done well with supervision and had committed "one of the most serious offenses that the State can charge in this state" which carries "the second highest penalty that a non-enhanced felony can carry." The prosecutor noted a definite need to protect the public. He then expressed his concern about appropriate treatment while noting that the sexual offender assessment did not agree with the plea recommendation and the PSI author, after conducting a "thorough presentence," made "a recommendation referring to initial confinement in the three- to five-year range."

¶ 10. The prosecutor then explained that he had inquired of the PSI author how treatment would be run in prison and was informed that it would take six to nine months to get someone into the program and then six months to four years to complete a treatment program. He indicated that he was "pass[ing] that along to the Court for whatever help it may or may not be in terms of if the Court . . . chooses to send [Sprang] to prison . . . or chooses to accept the plea agreement." The prosecutor then closed his remarks.

¶ 11. Sprang's counsel did not object to the prosecutor's remarks. However, he began his statements by observing that "what [the prosecutor] has said, I fear if somebody ever looks at a transcript, this might be considered a violation of the plea agreement." He then asked the prosecutor to summarize his recommendation one more time. The prosecutor declined to do so and the trial court directed the defense to move on, stating that the recommendation was clear.

## DISCUSSION

¶ 12. At the outset, we briefly address the State's argument that Sprang waived his right to claim a breach of his plea agreement because his defense counsel failed to object to the prosecutor's remarks at sentencing. While the issue is waived because of defense counsel's failure to object, Sprang seeks relief via a claim of ineffective assistance of counsel based on the failure to object.

¶ 13. Before addressing Sprang's claim of ineffective assistance of counsel, we must first address whether there was, in fact, a material and substantial breach of the plea agreement. *State v. Naydihor*, 2004 WI 43, ¶ 9, 270 Wis. 2d 585, 678 N.W.2d 220. If we conclude that there was not a breach of the plea agreement, then defense counsel's failure to object would not constitute deficient performance. *Id.* We therefore turn to the primary issue on appeal—whether the State breached the terms of its plea agreement with Sprang.

### Breach of the Plea Agreement

¶ 14. Our supreme court recently set forth the standards for reviewing an alleged breach of a plea agreement in *Naydihor*:

> [A]n accused has a constitutional right to the enforcement of a negotiated plea agreement. . . .
>
> A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement. An actionable breach

794

must not be merely a technical breach; it must be a material and substantial breach. When the breach is material and substantial, a plea agreement may be vacated or an accused may be entitled to resentencing.

Whether the State breached a plea agreement is a mixed question of fact and law. The precise terms of a plea agreement between the State and a defendant and the historical facts surrounding the State's alleged breach of that agreement are questions of fact. On appeal, the circuit court's determinations as to these facts are reviewed under the clearly erroneous standard. Whether the State's conduct constitutes a material and substantial breach of the plea agreement is a question of law that this court reviews de novo. A breach is material and substantial when it "defeats the benefit for which the accused bargained."

*Id.*, ¶¶ 10–11 (citing *State v. Williams*, 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733).

¶ 15. Here, the parties do not dispute the terms of the plea agreement. Therefore, our discussion focuses on whether the State's conduct constitutes a material and substantial breach of the plea agreement. On this issue, we have the benefit of the supreme court's recent opinion in *Naydihor*.[5]

¶ 16. In *Naydihor*, the defendant and the State reached an agreement similar to the one in this case— the State would recommend probation, but was free to recommend the conditions and length of probation. *Naydihor*, 678 N.W.2d 220, ¶¶ 3, 12. On appeal, Naydihor argued that the prosecutor's comments at sentencing constituted a material and substantial breach

---

[5] We note that *State v. Naydihor*, 2004 WI 43, 270 Wis.2d 585, 678 N.W.2d 220, was decided on April 15, 2004, after the parties had completed the briefing in this case.

of the plea agreement because the prosecutor implied to the court that a harsher sentence was needed than that recommended and highlighted Naydihor's negative attributes, *i.e.*, his history of substance abuse, the victim's substantial injuries and calling him a danger to the community. *Id.*, ¶ 15.

¶ 17. In assessing Naydihor's claims, the supreme court looked to its decision in *Williams* which held that the prosecutor's comments at sentencing must "undercut the essence of the plea agreement" in order to constitute a breach. *Naydihor*, 678 N.W.2d 220, ¶ 17 (citing *Williams*, 249 Wis. 2d 492, ¶ 46). The prosecutor's comments in *Williams* were held to constitute such a breach because they "implied that had the State known more about the defendant [prior to reading the presentence investigation report], it would not have entered into the plea agreement." *Williams*, 249 Wis. 2d 492, ¶ 47. The *Williams* court reasoned that by adopting the information in the presentence investigation report as her own opinion, the prosecutor created the impression that she was arguing against the negotiated terms of the plea agreement. *Id.*, ¶ 48. In assessing the prosecutor's remarks, the *Williams* court stated that the prosecutor's remarks "covertly implied to the sentencing court that the additional information available from the presentence investigation report and from a conversation with the defendant's ex-wife raised doubts regarding the wisdom of the terms of the plea agreement." *Naydihor*, 678 N.W.2d 220, ¶ 18 (citing *Williams*, 249 Wis. 2d 492, ¶ 50). The *Williams* court noted that, "Although the State is not barred from using negative information about the defendant that has come to light after the plea agreement and before the sentencing, the State may not imply that if the State had known more about the defendant, the State

would not have entered into the plea agreement." *Williams*, 249 Wis. 2d 492, ¶ 50 (footnote omitted). Finally, the *Williams* court stated that the information offered by the prosecutor in *Williams* supported a more severe sentence of a prison term and was unnecessary to explain or support the plea agreement that the State would recommend the minimum sentence of probation. *Id.*, ¶ 51.

¶ 18. In looking beyond *Williams* to other cases addressing alleged breach of plea agreements, the *Naydihor* court cited *State v. Hanson*, 2000 WI App 10, ¶ 14, 232 Wis. 2d 291, 606 N.W.2d 278, for the proposition that a prosecutor may cite aggravating factors relevant to the sentencing and to seek a sentence at the high end of an agreed upon cap, and *State v. Ferguson*, 166 Wis. 2d 317, 319–21, 324, 479 N.W.2d 241 (Ct. App. 1991), for its holding that a plea agreement cannot prohibit the State from informing the trial court of aggravating sentencing factors and that listing aggravating factors can be necessitated by a plea agreement in which the prosecutor agrees to recommend probation but is free to argue for the maximum allowable sentence. *Naydihor*, 678 N.W.2d 220, ¶¶ 19–22.

¶ 19. After examining previous case law, the *Naydihor* court concluded that the plea agreement in that case permitted the State to discuss aggravating factors and relevant behavioral characteristics of the defendant in order to justify an unusual sentencing recommendation within the confines of the plea agreement. *Id.*, ¶ 25. The *Naydihor* court held that the prosecutor's statements did not insinuate a distancing from the sentencing recommendation but rather were necessary to justify ten years of highly monitored probation,

including weekly random drug testing, chemical dependency assessments and counseling, and one year of jail time. *Id.*, ¶¶ 25–26, 28.

¶ 20. In reaching its decision, the *Naydihor* court also noted that the State in that case, unlike the agreement in *Williams*, did not agree to recommend the minimum sentence; it agreed only to recommend some type of probation and dismiss one of the charges. *Naydihor*, 678 N.W.2d 220, ¶ 28. Also, unlike the prosecutor in *Williams*, the prosecutor in *Naydihor* made no mention of the recommendation in the PSI report or otherwise intimated that the State no longer supported the plea agreement. *Naydihor*, 678 N.W.2d 220, ¶ 29.

¶ 21. Turning back to Sprang's claim, we conclude that this case is more akin to *Williams* than *Naydihor*. We begin our analysis by acknowledging, under *Naydihor*, that the terms of the plea agreement, which permitted the prosecutor to argue the length and terms of probation, provided the prosecutor with substantial latitude in his presentation of negative information about Sprang in an effort to persuade the sentencing court to impose a stayed sentence and to further impose a substantial period of confinement as a condition of probation. However, unlike the prosecutor in *Naydihor* who never mentioned prison time, the prosecutor in this case expressly referred to the possibility of a prison setting, even going so far as suggesting the term of confinement necessary to meet Sprang's treatment needs. *See Naydihor*, 678 N.W.2d 220, ¶ 16.

¶ 22. Further distinguishing this case from *Naydihor* and likening it to *Williams* are the prosecutor's observations that (1) both the PSI and sex offender assessment reports disagreed with the probation rec-

ommendation set out in the plea agreement; and (2) Sprang was "high risk" and had not previously done well on probation.

¶ 23. "[W]hat the prosecutor may not do is personalize the information, adopt the same negative impressions as [the author of the presentence investigation report] and then remind the court that the [author] had recommended a harsher sentence than recommended." *Williams*, 249 Wis. 2d 492, ¶ 48 (citation and footnote omitted). While not expressly stating that he had changed his impression of Sprang, *see id.*, ¶ 47, the prosecutor observed that he found it "troubling" that Sprang's version of the offense in the PSI report contradicted his guilty plea, that he found it clear from the PSI report and sex offender evaluation that Sprang was "high risk," and finally, that he was "concerned" that the PSI report and sex offender assessment did not agree with the plea agreement and made a recommendation of initial confinement in the three- to five-year range.

¶ 24. We conclude that the prosecutor's comments, including a recitation of the PSI recommendation for confinement, constituted a breach of the plea agreement by "insinuat[ing] that [the State] was distancing itself from its recommendation," *see Naydihor*, 678 N.W.2d 220, ¶ 28, and "cast[ing] doubt on . . . its own sentence recommendation." *See Williams*, 249 Wis. 2d 492, ¶ 50 (footnote omitted). In doing so, we acknowledge the State's contention that the prosecutor's remarks were merely informative in nature. Such an argument begs the question. No doubt the prosecutor's remarks were informative; however, the core inquiry is whether such "information" breached the terms of the plea agreement. Our inquiry does not turn on whether

799

the prosecutor intended to breach the agreement,[6] *see State v. Howland*, 2003 WI App 104, ¶ 31, 264 Wis. 2d 279, 663 N.W.2d 340, but rather we look to the practical effect of the prosecutor's statements. Here, that effect was to deprive Sprang of his constitutional right to the enforcement of the negotiated terms of his plea agreement. *See Williams*, 249 Wis. 2d 492, ¶ 37.

*Waiver/Ineffective Assistance of Counsel*

¶ 25. Having concluded that State breached its plea agreement with Sprang, we turn next to Sprang's claim of ineffective assistance of counsel. *See Naydihor*, 678 N.W.2d 220, ¶ 9. In order to prove ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's errors or omissions prejudiced the defense. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation. *See id*. at 636. We measure performance by the objective standard of what a reasonably prudent attorney would do in similar circumstances. *See id*. at 636–37. Prejudice generally results when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 642. However, "[w]here the attorney is guilty of deficient performance in failing to object to a substantial and material breach of the plea agreement, the defense is automatically prejudiced." *State v. Howard*, 2001 WI App 137, ¶ 26, 246 Wis. 2d

---

[6] Nor does our inquiry turn on whether the sentencing court was influenced by the State's breach. *State v. Poole*, 131 Wis. 2d 359, 363–64, 394 N.W.2d 909 (Ct. App. 1986). Therefore, we do not consider the trial court's statement that it did not base its sentencing decision in this case on the State's remarks.

475, 630 N.W.2d 244 (citation omitted). We review de novo whether performance was deficient and prejudiced the defendant, but affirm the trial court's findings of fact unless clearly erroneous. *Pitsch*, 124 Wis. 2d at 633–34.

¶ 26. Sprang's defense counsel testified at the postconviction motion hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). There, he explained that at the time of the prosecutor's remarks, he was not certain that the State had violated the plea agreement. In addition, defense counsel testified that he perceived one of the prosecutor's arguments as more "informational" in nature as opposed to pressing for prison time. He also testified that in his experience he believed the sentencing judge would exercise independent judgment on the matter and would not be unduly swayed by the prosecutor's statements. Counsel also expressed concern as to which new judge would be assigned if he was to object and a new sentencing were ordered.

¶ 27. We agree with the State that defense counsel had valid strategic reasons for choosing not to object to the prosecutor's remarks. However, we have already concluded that those remarks constituted a breach of the negotiated plea agreement. When defense counsel made the decision to forego an objection, he did not consult with Sprang regarding this new development or seek Sprang's opinion in the matter.[7] Thus, Sprang had

---

[7] We reject the State's assertion that there is no evidence in the record to suggest that Sprang and his defense counsel had not consulted at the time of the remarks or at some other point discussed trial strategy, including whether to request a substitution of judge. The transcript of defense counsel's testimony at the postconviction hearing clearly establishes that counsel did not discuss with Sprang his decision to forego an objection to

801

no input into a situation where the original plea agreement, which limited the State to arguing for conditions of probation, had morphed into one in which the State could suggest that the court impose a prison sentence without probation. As such, the plea agreement to which Sprang pled no longer existed.

¶ 28. That defense counsel failed to consult Sprang as to the new agreement violates the holding of *State v. Woods*, 173 Wis. 2d 129, 132–33, 141, 496 N.W.2d 144 (Ct. App. 1992). There, the defendant entered into plea agreement which permitted the State to seek a two-year sentence consecutive to an existing juvenile court placement. *Id.* at 133. However, just prior to sentencing and without the defendant's knowledge, defense counsel and the prosecutor agreed that the State would ask for a two- to three-year consecutive sentence. *Id.* at 135–36. The prosecutor did so at sentencing, and the defendant's attorney did not object to the prosecutor's sentencing request, which was contrary to the plea agreement entered into by the defendant. *Id.* at 135. On appeal, we held that a guilty plea is a personal right of the defendant and that the defendant was entitled to withdraw his plea on grounds that defense counsel's failure to object had resulted in a renegotiated plea agreement to which the defendant was never a party.[8] *Id.* at 141. We held that "a

the prosecutor's remarks. Further, whether Sprang and his defense counsel had discussed a substitution of judge at a different juncture as part of a trial strategy is inapposite to whether Sprang would have chosen to proceed with the sentencing if he had been consulted.

[8] The defendant in *State v. Woods*, 173 Wis. 2d 129, 132, 496 N.W.2d 144 (Ct. App. 1992), additionally appealed on grounds that his plea was invalid because the law does not permit a

802

defendant's attorney cannot renegotiate the plea without the knowledge or consent of his or her client." *Id.*

¶ 29. Here, the strategic decision by Sprang's defense counsel to forego an objection to the State's breach of the plea agreement without consulting Sprang was tantamount to entering a renegotiated plea agreement without Sprang's knowledge or consent. It is on this basis that we conclude that defense counsel's performance was deficient. Because counsel's deficient performance involved a breach of a plea agreement, Sprang is automatically prejudiced. *See Howard,* 246 Wis. 2d 475, ¶ 26.

## *CONCLUSION*

¶ 30. We conclude that the prosecutor's remarks at sentencing constituted a substantial and material breach of Sprang's plea agreement. While trial counsel's failure to object represented acceptable strategy, counsel's further failure to consult with sprang about the breach constituted ineffective assistance of counsel. Sprang was prejudiced because he pled guilty under a different plea agreement that he never ratified. As such, we conclude that Sprang is entitled to a resentencing before a different judge. We therefore reverse and remand for that proceeding.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

sentence consecutive to a juvenile disposition. The court of appeals agreed that the defendant was entitled to withdraw his plea on that ground. *Id.*