COURT OF APPEALS
DECISION
DATED AND FILED

November 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP867-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF170

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCQUES R. LEHOUILLIER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waushara County: GUY D. DUTCHER, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Marcques Lehouillier appeals a judgment of conviction and an order denying his postconviction motion. Lehouillier argues

that he is entitled to plea withdrawal or resentencing based on an alleged breach of the plea agreement by the prosecutor. For the reasons set forth in this opinion, we reject Lehouillier's arguments. We affirm.

## BACKGROUND

¶2 Pursuant to a plea agreement, Lehouillier pled no contest to two counts of child enticement and one count of first-degree child sexual assault, and the parties agreed to jointly recommend thirteen years of initial confinement and fifteen years of extended supervision. However, at sentencing, the State recommended fifteen years of initial confinement and fifteen years of extended supervision. Defense counsel, Attorney Paul Zilles, did not object to the State's deviation from the plea agreement as stated on the record at the plea hearing. Attorney Zilles also deviated from the joint sentencing recommendation, arguing instead for seven years of initial confinement and fifteen years of extended supervision. The circuit court imposed seventeen years of initial confinement and eighteen years of extended supervision.

¶3 Lehouillier moved to withdraw his plea or for resentencing on ground that the prosecutor breached the plea agreement. The circuit court held an evidentiary hearing, at which the prosecutor, Attorney Zilles, and Lehouillier testified.

*Prosecutor's Testimony and Exhibits*

¶4 The prosecutor testified to the following. At the time the plea was entered, the plea agreement included a joint sentencing recommendation. However, prior to the sentencing hearing, Attorney Zilles informed the prosecutor that Lehouillier had changed his mind about the joint recommendation. Attorney

Zilles informed the prosecutor that, instead, Lehouillier "would prefer to be able to argue the sentence." The prosecutor agreed to that change. The prosecutor did not "remember exactly the terms, but from the transcripts that [he] was able to review, [he] … asked for … a couple more years. And Attorney Zilles ultimately asked for significantly less years than the original joint recommendation." The prosecutor communicated exclusively with Attorney Zilles about modifying the plea agreement, but Attorney Zilles made clear that he had been discussing the case with Lehouillier.

¶5    In preparation for sentencing, the prosecutor prepared a sentencing outline, which was offered into evidence at the postconviction motion hearing. The outline as originally drafted indicated that the prosecutor intended to recommend thirteen years of initial confinement followed by fifteen years of extended supervision. Those lines were crossed out, however, and the prosecutor's handwritten notes indicated that the State would argue for a sentence of fifteen years of initial confinement and fifteen years of extended supervision. The prosecutor believed the notes were consistent with his recollection that the plea agreement was amended as the parties were getting closer to sentencing. Additionally, the prosecutor took notes during the sentencing hearing, which were also entered into evidence at the postconviction motion hearing. Those notes indicated that Attorney Zilles "didn't want joint rec," and that "defendant wants to argue sentence."

*Defense Counsel's Testimony*

¶6    Attorney Zilles testified as follows. Attorney Zilles did not have an independent recollection of discussing the joint recommendation with Lehouillier or a decision being made to ask for an argued sentence rather than a joint

recommendation. However, Attorney Zilles would not have represented to the prosecutor that his client wanted something if it were not what the client had expressed to him. Additionally, if Attorney Zilles had believed that the prosecutor had breached the plea agreement at sentencing, he would have objected at sentencing.

¶7 According to his usual practice, Attorney Zilles would have figured out what the recommendations were and the reasons for the recommendations in preparing for sentencing. His usual practice would have included reviewing the case file provided by prior counsel, which in this case would have allowed him to become aware of the joint recommendation that the parties agreed to at the plea hearing. Attorney Zilles recalled that Lehouillier expressed that he was having second thoughts about the joint recommendation, and that Attorney Zilles explained to Lehouillier that his options were to seek plea withdrawal or to have an argued sentence. Attorney Zilles also told Lehouillier that he did not think a plea withdrawal motion would be successful.

¶8 After the sentencing hearing, Lehouillier complained to him that the prosecutor had breached the plea agreement by recommending a longer sentence than the parties agreed to jointly recommend under the plea agreement. At that point, Attorney Zilles explained to Lehouillier that "because it was an argued sentence, [the prosecutor] could ask for whatever [the prosecutor] want[ed]." Attorney Zilles did not recall having explained that to Lehouillier prior to sentencing, but he believed that he had, because "some of this stuff is pretty standard procedure."

*Lehouillier's Testimony*

¶9 Lehouillier testified as follows. Lehouillier met with Attorney Zilles prior to sentencing and informed him that he wished to withdraw his plea and go to trial. Attorney Zilles told Lehouillier that plea withdrawal was not possible. Attorney Zilles and Lehouillier never discussed modifying the plea agreement to drop the joint sentencing recommendation. Lehouillier did not understand at the time that, if Attorney Zilles argued for less time than agreed to under the joint recommendation, the State would be allowed to argue for more time than the joint recommendation. The first time that was explained to Lehouillier was after sentencing, when Lehouillier complained to Attorney Zilles about the prosecutor's increased recommendation and Attorney Zilles explained how an argued sentence works.

¶10 Lehouillier tried to object when the prosecutor asked for fifteen years of initial confinement during the sentencing hearing, but Attorney Zilles told him to be quiet. In his allocution, Lehouillier did not argue that the prosecutor had breached the plea agreement because Attorney Zilles told him not to.

*Circuit Court Determinations*

¶11 The circuit court made the following fact and credibility determinations based on the hearing testimony and the exhibits. Lehouillier wanted out of the joint recommendation reached under the plea agreement. Attorney Zilles explained to Lehouillier that his options were plea withdrawal or an argued sentence and that plea withdrawal was unlikely. Attorney Zilles negotiated a change of the plea agreement with the prosecutor, as reflected in the prosecutor's notes and the sentencing arguments made by the parties. There was a

"clear understanding between counsel that there was to be a modification of the original agreement and that it was in the format of a 'cap and argue' sentence."

¶12     The circuit court further found that Attorney Zilles and Lehouillier discussed the change to the plea agreement and reached an understanding that the modified plea agreement would be for the State to cap its recommendation at fifteen years of initial confinement and fifteen years of extended supervision, with Lehouillier free to argue—*i.e.*, the "cap and argue" mode.  Lehouillier's testimony that Attorney Zilles did not discuss the change to the plea agreement with him and that Lehouillier did not understand the modified plea agreement was not credible; rather, Lehouillier understood the terms of the plea agreement as modified.

¶13     Based on these findings, the circuit court denied the postconviction motion for plea withdrawal or resentencing.  Lehouillier appeals.

## DISCUSSION

¶14     Lehouillier argues that the State breached the plea agreement by failing to follow the joint sentencing recommendation stated on the record at the plea hearing.  He contends that there was no valid modification of the plea agreement after the plea hearing.  He contends that there was no direct evidence at the postconviction motion hearing that Attorney Zilles ever discussed modifying the plea agreement with Lehouillier, that Lehouillier understood that a plea modification would allow the State to argue for a longer sentence than the original plea agreement, or that Lehouillier agreed to the modification.

¶15     "[T]he terms of the plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact."  *State v. Williams*, 2002 WI 1, ¶2, 249 Wis. 2d 492, 637 N.W.2d 733.

6

We uphold a circuit court's findings of fact unless they are clearly erroneous. *Id.*, ¶5. However, "whether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law" subject to our independent review. *Id.*, ¶¶2, 5.

¶16 We now summarize Lehouillier's three arguments.

¶17 First, Lehouillier argues that the circuit court's factual findings were clearly erroneous. He contends that there was no evidence to support the court's finding that *Lehouillier*, as opposed to his attorney, agreed to a modification of the plea agreement. Rather, he contends, the only direct evidence on this point was from Lehouillier himself, who testified that he did not agree to any modification of the plea agreement. He argues that, although the testimony may have supported a finding that Attorney Zilles and the prosecutor agreed to modify the plea agreement, it did not support a finding that Lehouillier was part of that agreement. He points out that no one testified to recalling any direct communication with Lehouillier about modifying the plea agreement. He points out that both Lehouillier and Attorney Zilles testified that Lehouillier tried to interrupt during the prosecutor's sentencing arguments but that Attorney Zilles quieted him. He argues that the testimony established that it was only *after* sentencing that Attorney Zilles explained to Lehouillier that dropping the joint recommendation allowed the State to argue for a harsher sentence. He also points to Attorney Zilles' concession on cross-examination at the postconviction motion hearing that it was "possible" that he had previously stated to postconviction counsel that he was not aware of the original plea agreement. As far as we understand this part of Lehouillier's argument, he is asserting that Attorney Zilles could not have discussed a plea agreement modification with Lehouillier because he was not aware of the plea agreement in the first instance.

¶18     Second, Lehouillier argues that there was no evidence to support the circuit court's finding that the State agreed to cap its recommendation at fifteen years of initial confinement and fifteen years of extended supervision. He points out that the prosecutor could not recall the terms of the modified agreement. He contends that the court's finding that the State agreed to a "cap and argue" modified recommendation reveals that the court misunderstood the testimony.

¶19     Third, Lehouillier contends that the parties should have put any modification of the plea agreement on the record. *See State v. Hampton*, 2004 WI 107, ¶34, 274 Wis. 2d 379, 683 N.W.2d 14 ("A circuit court … should make a complete record of the plea agreement." (internal quotation marks and quoted source omitted)). He argues that, because the parties did not put the modification of the plea agreement on the record, the State cannot meet its burden to show that there was a clear meeting of the minds to modify the agreement. *See United States v. Robison*, 924 F.2d 612, 613-14 (6th Cir. 1991) (explaining that "[p]lea agreements are contractual in nature," requiring a "meeting of the minds") (quoted source omitted). He contends that the State materially and substantially breached the plea agreement that was entered on the record by failing to make the joint sentencing recommendation, and that he is therefore entitled to plea withdrawal or resentencing before a different judge. *See State v. Howard*, 2001 WI App 137, ¶¶32-37, 246 Wis. 2d 475, 630 N.W.2d 244.

¶20     Before addressing the merits of Lehouillier's arguments, we briefly explain our approach regarding a potential forfeiture issue involving alleged ineffective assistance of counsel. The State argues that Lehouillier forfeited a direct claim that the State breached the plea agreement by failing to object at the sentencing hearing, and that he is therefore limited to raising that argument as a

claim of ineffective assistance of counsel.[1]  *See id.*, ¶12.  We choose to address Lehouillier's claim of ineffective assistance of counsel on the merits.

¶21    Turning to the ineffective assistance issue and related merits discussion, the State argues that the circuit court properly found that the plea agreement was modified and that there was therefore no breach of the plea agreement, and thus counsel was not ineffective by failing to object.

¶22    "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement."  *See id.*, ¶13.  Once a defendant has entered a negotiated plea agreement, his or her counsel may not renegotiate the plea agreement without the defendant's knowledge or consent.  *See State v. Sprang*, 2004 WI App 121, ¶¶27-29, 274 Wis. 2d 784, 683 N.W.2d 522.  If counsel acquiesces to a revised plea agreement without consulting with the defendant or gaining his or her consent, counsel has performed deficiently.  *Id.*, ¶2; *see also State v. Woods*, 173 Wis. 2d 129, 141, 496 N.W.2d 144 (Ct. App. 1992) (concluding that "Woods' guilty plea was not knowing and voluntary because his attorney failed to inform him of the renegotiated sentence recommendation" and also "failed to gain Woods' agreement to that modification"; and, explaining that,

---

[1] The State points out that Lehouillier does not allege ineffective assistance of counsel in his brief-in-chief.  However, the State acknowledges that, when the defendant fails to properly raise a plea breach argument as a claim of ineffective assistance of counsel, this court conducts an ineffective assistance of counsel analysis.  *See State v. Duckett*, 2010 WI App 44, ¶¶4, 6, 324 Wis. 2d 244, 781 N.W.2d 522.  In reply, Lehouillier asserts that he argued in the circuit court that Attorney Zilles was ineffective by failing to object to the prosecutor's breach of the plea agreement.  *See State v. Sprang*, 2004 WI App 121, ¶¶27-29, 274 Wis. 2d 784, 683 N.W.2d 522 (defense counsel's strategic decision to forego an objection to the State's breach of the plea agreement without consulting the defendant was tantamount to entering a renegotiated plea agreement without the defendant's knowledge or consent, and was therefore deficient performance that automatically prejudiced the defendant).  He asserts that, if he failed to properly raise ineffective assistance of counsel in his brief-in-chief, then appellate counsel is now ineffective.

"[b]ecause the decision to plead guilty is a personal right of a defendant, ... a defendant's attorney cannot renegotiate the plea without the knowledge and consent of his or her client" (citation omitted)). If counsel performed deficiently by renegotiating the plea agreement without the defendant's knowledge and consent, that deficient performance automatically prejudices the defendant. *Sprang*, 274 Wis. 2d 784, ¶¶25-30.

¶23 However, "[i]f we conclude that there was not a breach of the plea agreement, then defense counsel's failure to object would not constitute deficient performance." *Id.*, ¶13. We reach that conclusion here, for reasons we now explain.

¶24 The issue of whether the prosecutor breached the plea agreement turns on whether Lehouillier agreed to modify the plea agreement to no longer include the joint recommendation and to substitute a "cap and argue" agreement. We conclude that the court's finding that the plea agreement was modified was supported by the evidence at the motion hearing and, therefore, was not clearly erroneous.

¶25 The testimony by Attorney Zilles and the prosecutor, together, supports the circuit court's finding that Lehouillier agreed to modify the plea agreement to allow for a "cap and argue" agreement regarding the sentence. Although Attorney Zilles could not recall making the decision to modify the plea agreement, he did recall that Lehouillier had second thoughts about the joint sentencing recommendation and that he explained to Lehouillier that Lehouillier's options included to change to an "argued sentence" instead. We have summarized above the relevant testimony of the prosecutor and Attorney Zilles, which was credited by the circuit court. The circuit court was entitled to rely on that

testimony and determine that Lehouillier's testimony to the contrary was not credible. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983) ("[W]hen the [circuit court] acts as the finder of fact, and where there is conflicting testimony, the [circuit court] is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." (internal quotation marks and quoted source omitted); *see also* WIS. STAT. § 805.17(2) (2019-20)[2] ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.")).

¶26    We are also not persuaded by Lehouillier's argument that the circuit court must have misunderstood the testimony because it found that the modified plea agreement included that the State would cap its sentencing recommendation at fifteen years of initial confinement and fifteen years of extended supervision. It is true that neither counsel testified that the modified plea agreement included a cap on the State's recommendation. We also note that Attorney Zilles testified that, after sentencing, he explained to Lehouillier that the modified plea agreement "was an argued sentence" that allowed the State to "ask for whatever they want." However, the prosecutor's handwritten notes indicated that the prosecutor had changed his intended sentencing recommendation from the joint recommendation of thirteen years of initial confinement and fifteen years of extended supervision to a recommendation of fifteen years of initial confinement and fifteen years of extended supervision. The prosecutor testified that his handwritten notes were

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

consistent with his recollection that the plea agreement was modified because Lehouillier wanted to be free to argue. The court was entitled to resolve any conflicts in the testimony and draw reasonable inferences in favor of a finding that the plea agreement was modified to a "cap and argue" sentence.[3] *See **Noll***, 115 Wis. 2d at 643.

¶27 As for Lehouillier's argument about the record that should have been made by the parties, we are not persuaded that the plea agreement could not have been modified because the modification was not stated on the record. Although Lehouillier asserts that any modification must be placed on the record, he cites no authority requiring any modification to be stated on the record to be valid.

¶28 In sum, we conclude that the circuit court properly found that Lehouillier agreed to amend the plea agreement from a joint recommendation to a "cap and argue" sentence. The State therefore did not breach the plea agreement, and Attorney Zilles was not ineffective for failing to object to the State's sentencing recommendation. We affirm.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Moreover, even if the circuit court erred by finding that the prosecutor agreed to cap his sentencing recommendation, we are not persuaded that the error provides a basis to disturb the court's finding that the prosecutor did not breach the plea agreement. That is, if the modified plea agreement did not include any cap on the prosecutor's sentencing recommendation, so that both sides were free to argue, the prosecutor's sentencing recommendation was still not a breach.