COURT OF APPEALS
DECISION
DATED AND FILED

April 27, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2022AP53-CR**

Cir. Ct. No. **2016CF108**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ZACHARY T. HOHN,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waupaca County:  VICKI L. CLUSSMAN, Judge.  *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Zachary Hohn appeals a judgment of conviction and an order denying a postconviction motion for resentencing.  Hohn contends that his

trial counsel was ineffective at sentencing. Specifically, he argues that counsel should have objected to the State's sentencing arguments related to Hohn's co-defendant, Adam Ozuna, which Hohn argues breached the plea agreement. Hohn also contends that the sentencing court erroneously exercised its discretion by relying on the sentence Ozuna received when the court sentenced Hohn. For the reasons set forth in this opinion, we reject those contentions. We affirm.

¶2     Hohn pled no-contest to first-degree reckless homicide in return for the State's agreement to move to dismiss and read in for sentencing purposes a charge of robbery by use of force. The State also agreed not to recommend any specific sentence.

¶3     At the sentencing hearing, the State argued that both Hohn and Ozuna were culpable for the victim's death. The State then said: "Adam Ozuna was the co-defendant, he was nine years older, he was sentenced to 30 years initial confinement and 10 years extended supervision. In this case, I am asking you to order a prison sentence."

¶4     The circuit court imposed thirty years of initial confinement and ten years of extended supervision. The court stated that it considered as mitigating factors that Hohn was only sixteen years old when he committed the offense and that he had a difficult childhood. The court also stated, however, that those mitigating factors did not "mitigate[] the case enough that … [Hohn] should receive a different sentence than Mr. Ozuna received." The court explained that it believed that Hohn and Ozuna "were equally involved in what happened to" the victim.

¶5     In its sentencing comments, the circuit court explained that it considered the gravity of the offense, the need to protect the public, and Hohn's personal characteristics, and explained further that it "put[] the most weight on the

2

gravity of the offense in this case." The court explained: "[T]his is probably the worst and most grave offense that can take place. Where an individual is deceased because of things that you did, and that [the victim] died in such a violent and horrific manner." The court concluded its sentencing comments by stating: "I don't think there's any reason not to impose the same sentence that Mr. Ozuna received. Because I believe the two of you were equally culpable for what happened to [the victim], and that both of you need to have a similar punishment." The court concluded: "So I am going to sentence you to … 30 years of initial confinement, followed by 10 years of extended supervision."

¶6 Hohn filed a postconviction motion seeking resentencing. He argued that the State breached the plea agreement and that his counsel was ineffective by failing to object. Hohn also argued that the circuit court erroneously exercised its sentencing discretion by relying on Ozuna's sentence in determining the sentence to impose on Hohn. The court held an evidentiary hearing, and then denied the motion. Hohn appeals.

*Ineffective Assistance of Counsel*

¶7 When, as here, defense counsel does not object to the alleged breach of the plea agreement, we review for whether trial counsel was ineffective by failing to object. *See* **State v. Howard**, 2001 WI App 137, ¶12, 246 Wis. 2d 475, 630 N.W.2d 244. "If we conclude that there was not a breach of the plea agreement, then defense counsel's failure to object would not constitute deficient performance." **State v. Sprang**, 2004 WI App 121, ¶13, 274 Wis. 2d 784, 683 N.W.2d 522. We reach that conclusion here.

¶8 "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement." **Howard**, 246 Wis. 2d 475, ¶13. The State breaches

3

a plea agreement if it does not abide by its explicit terms or if it indirectly undermines the agreement by "render[ing] less than a neutral recitation" of its terms. *State v. Poole*, 131 Wis. 2d 359, 364, 394 N.W.2d 909 (Ct. App. 1986). A defendant is entitled to a remedy if the State's breach was "material and substantial," that is, if it "defeats the benefit for which the accused bargained." *Sprang*, 274 Wis. 2d 784, ¶14 (citation omitted). "[T]he terms of the plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact." *State v. Williams*, 2002 WI 1, ¶2, 249 Wis. 2d 492, 637 N.W.2d 733. We uphold a circuit court's findings of fact unless those are clearly erroneous. *Id.*, ¶5. However, "whether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law" subject to our independent review. *Id.*, ¶¶2, 5.

¶9 Here, the plea agreement prohibited the State from recommending a specific sentence, and Hohn does not contend that the State did so directly. Hohn contends, however, that the State improperly accomplished an "end run" around the plea agreement by indirectly inviting the circuit court to impose the same sentence Ozuna received, that is, thirty years of initial confinement and ten years of extended supervision. *See id.*, ¶42 (explaining that "'[e]nd runs' around a plea agreement are prohibited," and that "'[t]he State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended'" (citation omitted)). Hohn points to the State's argument that both Hohn and Ozuna were equally culpable in the victim's death but that Hohn had "primary" responsibility. Hohn argues that the State then covertly invited the court to impose the sentence Ozuna received by stating Ozuna's sentence immediately before saying: "In this case, I am asking you to order a prison sentence."

¶10     We are not persuaded that the State covertly invited the court to impose the same sentence that Ozuna received. The State began its sentencing comments by focusing on the severity of the crime, Hohn's role in causing the victim's death, his failure to take responsibility, and the impact of the crime on the victim's family. The State then pointed out Hohn's young age and difficult childhood, and the fact that the system had repeatedly failed to provide Hohn the help he needed. After making those comments, the State informed the court that Ozuna "was nine years older" and had received thirty years of initial confinement and ten years of extended supervision. The State then asked the court "to order a prison sentence," without asking for any specific amount.

¶11     In context, then, nothing in the State's sentencing remarks as to the sentence received by Ozuna implied, directly or indirectly, that the State was inviting the court to impose the same sentence as Ozuna received. The State argued facts specific to Hohn—and highlighted that Ozuna was nine years older—before it stated the sentence Ozuna received, and then asked the court to impose a prison sentence without any recommendation as to length. The State had a "duty to convey relevant information to the sentencing court," *id.*, ¶44, and the sentence Ozuna received was a relevant sentencing consideration, *see **State v. Giebel***, 198 Wis. 2d 207, 220-21, 541 N.W.2d 815 (Ct. App. 1995). We discern no breach of the plea agreement based on the State's conveying the sentence Ozuna received, and we

5

therefore conclude that trial counsel was not ineffective by failing to object to the State's sentencing arguments.[1]

¶12    Next, Hohn argues that the circuit court erroneously exercised its sentencing discretion by relying on the sentence Ozuna received in deciding Hohn's sentence.  He contends that Ozuna's sentence was the most important factor to the court, citing the court's sentencing comments that the court did not think there was "any reason not to impose the same sentence that Mr. Ozuna received" because the court believed they were "equally culpable for what happened to" the victim, and that they needed "to have a similar punishment.  So I am going to sentence you to … 30 years of initial confinement, followed by 10 years of extended supervision." Hohn contends that, because there was no relevant sentencing information about Ozuna before the court, it was improper for the court to rely on Ozuna's sentence to decide the sentence to impose on Hohn.  *See State v. Loomis*, 2016 WI 68, ¶31, 371 Wis. 2d 235, 881 N.W.2d 749 (circuit court erroneously exercises its discretion when it relies on irrelevant or improper factors).

¶13    "We review a circuit court's sentencing determination for erroneous exercise of discretion."  *See State v. Salas Gayton*, 2016 WI 58, ¶19, 370 Wis. 2d 264, 882 N.W.2d 459.  A circuit court properly exercises its discretion if it relies on facts of record and a "logical rationale founded upon proper legal standards."  *Id.* (citation omitted).

---

[1] We note that, on appeal, the State cites an unpublished per curiam decision that has no precedential or persuasive value and may not be cited as precedent or authority in any court of this state.  *See* WIS. STAT. RULE 809.23(3) (2021-22).  We remind the State that a future violation of the rules concerning citation of unpublished opinions may result in sanctions.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶14     Here, the court began its sentencing comments by stating that it was not going to impose the maximum sentence based on the mitigating factors of Hohn's young age and his difficult childhood. The court then explained that the court did not believe that those mitigating factors were "enough that … [Hohn] should receive a different sentence than Mr. Ozuna received." The court stated: "I believe that this is a situation where the two of you were equally involved in what happened to [the victim]."

¶15     The court explained that it was "putting the most weight on the gravity of the offense in this case." The court considered that the crime was "probably the worst and most grave offense that can take place. Where an individual is deceased because of things that you did, and that [the victim] died in such a violent and horrific manner." The court considered the evidence that Hohn "threw the first punch," and that after the victim was beaten and left in a ditch, Hohn did not "call an ambulance or try to get him any kind of help, which just shows an attitude of being completely disregarding of a person's well-being." The court explained that it considered Hohn's personal characteristics, including his prior offenses from a young age. The court determined that Hohn was a risk to the public due to his failure to take responsibility for any of his offenses, and that he would continue to be a risk to the public until he could "come to terms with the fact of what [he] did, and get some help for the things that happened to [him] in [his] past and for [his] own situation today." The court then reiterated that it did not think there was "any reason not to impose the same sentence that Mr. Ozuna received," because the court believed that they "were equally culpable for what happened to [the victim], and that both … need to have a similar punishment." The court concluded: "So I am going to sentence you to a 40-year sentence with 30 years of initial confinement, followed by 10 years of extended supervision."

¶16 Thus, the court explained that it considered facts relevant to the primary sentencing factors and objectives—that is, the gravity of the offense, Hohn's rehabilitative needs, and the need to protect the public—in determining that the same sentence that Ozuna received was also appropriate here. *See id.*, ¶22. The court did not simply rely on the fact that Ozuna received thirty years of initial confinement and ten years of extended supervision in determining Hohn's sentence. Rather, the court considered the standard sentencing factors and objectives as applied to Hohn and then explained that, based on those considerations, it believed that the same sentence that Ozuna received was the appropriate sentence here.

¶17 Moreover, we are not persuaded by Hohn's argument that the most important sentencing factor to the circuit court was the sentence that Ozuna received. The court expressly stated that it most heavily weighed the gravity of the offense in deciding the appropriate sentence for Hohn. We also are not persuaded by Hohn's argument that the court improperly considered Ozuna's sentence because the court did not sentence Ozuna and there was no indication that the court had reviewed the relevant sentencing information for Ozuna. "[A] sentence given to a similarly situated codefendant is relevant to the sentencing decision." *Giebel*, 198 Wis. 2d at 220-21. Hohn cites no authority for the proposition that a co-defendant's sentence is irrelevant if the court did not sentence the co-defendant and does not have all of the sentencing information as to the co-defendant before it. We discern no erroneous exercise of the court's sentencing discretion in this case. We affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.